U.S. DISTRICT COURT
**EASTERN** DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

APR 13 2007

JAMES W. McCORMACK, CLERK
By: _____
                              DEP CLERK

**OLD ST. PAUL MISSIONARY BAPTIST CHURCH**           **PLAINTIFF**

**V.**                                         NO. 3:07CV00043 WRW

**FIRST NATION INSURANCE GROUP;**
**AA RISK MANAGEMENT, INC.;**
**AA COMMUNICATIONS, INC.;**            This case assigned to District Judge _____
**GWEN MOYO; CRAIG GREENE;**            and to Magistrate Judge _____
**JOHN DOES 1-10;**
**DOE COMPANIES 1-10**                                    **DEFENDANTS**

## NOTICE OF REMOVAL

Defendants, First Nation Insurance Group, AA Risk Management, Inc., AA Communications,

Inc., Gwen Moyo and Craig Greene, hereby remove, and file their Notice of Removal of, a civil

action commenced against them in the Circuit Court of Crittenden County, Arkansas. Pursuant to

28 U.S.C. §§ 1441 and 1446, Defendants state as grounds for removal:

1.      The civil action being removed was commenced on March 15, 2007 in Crittenden

County Circuit Court as Civil Case Number CV 2007-126.

2.      It has been less than thirty (30) days since the original complaint and summons were

issued. The summons was served on Craig Greene on or about March 20, 2007.

3.      The complaint purports to state a cause of action against the Defendants for

Declaratory Relief and Damages for Breach of Surety Bond, Common Law Bad Faith, Fraud and

Conversion, Fraud in Investigation of Claims and Joint and Several Liability.

Page 1 of 4

4.     This Court has original jurisdiction over the civil action between Old St. Paul Missionary Baptist Church and First Nation Insurance Group, AA Risk Management, Inc., AA Communications, Inc., Gwen Moyo and Craig Greene pursuant to 28 U.S.C. §1332 and U.S.C. §1441 because there is complete diversity of citizenship between Old St. Paul Missionary Baptist Church, an alleged Arkansas non-profit corporation and First Nation Insurance Group, a Canadian corporat' ., AA Risk Management, Inc., a Louisiana corporation, AA Communications, Inc., a Louisiana corporation, Gwen Moyo, a Louisiana resident and Craig Greene, a Florida resident, and the amount in controversy exceeds Seventy Five Thousand Dollars and Zero cents ($75,000.00), exclusive of interest and costs.

5.     The United States District Court for the Eastern District of Arkansas, Jonesboro Division, is the District Court of the United States for the district and division within which this civil action is pending, and is the court to which this civil action may be removed pursuant to the provisions of 28 U.S.C. §1446(a).

6.     As of the date of the filing of this Notice of Removal, thirty (30) days have not expired since the receipt by the Defendants, First Nation Insurance Group, AA Risk Management, Inc., AA Communications, Inc., Gwen Moyo and Craig Greene through service or otherwise, of the initial pleading upon which this civil action is based.

7.     In accordance with 28 U.S.C. §1446(a), all process, pleadings and orders served upon the Defendants, First Nation Insurance Group, AA Risk Management, Inc., AA Communications, Inc., Gwen Moyo and Craig Greene in this action are attached.

WHEREFORE, Defendants and Petitioners, First Nation Insurance Group, AA Risk Management, Inc., AA Communications, Inc., Gwen Moyo and Craig Greene, hereby give notice

that the civil proceeding hereinbefore described has been removed to the United States District Court

for the Eastern District of Arkansas, Jonesboro Division, on the 10th day of April, 2007.

> HARDIN & GRACE, P.A.
> Attorneys for Defendants
> 500 Main Street, Suite A
> P.O. Box 5851
> North Little Rock, AR 72119-5851
> Telephone:   (501) 378-7900
> Facsimile:   (501) 376-6337

> By: _David A. Grace with permission Justin R Giles III, Esq._
>
> David A. Grace
> State Bar No. 76-044

> Less, Getz & Lipman
> Attorney for Defendants
> 100 Peabody Place, Suite 1150
> Memphis, Tennessee 38103
> Telephone:   (901) 525-8700
> Facsimile:   (901) 525-3569

> By: _____
>
> Justin R. Giles, III
> TN Bar No. 24123
> Applicant for Pro Hac Vice Admission

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was mailed to:

Mr. Lawrence W. Jackson
RIEVES, RUBENS & MAYTON
P.O. Box 1359
West Memphis, AR 72303

on this  13  Day of April, 2007.

David Grace with permission Justin R. Giles, III, Esq.

DAVID A. GRACE

FILED

IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
CIVIL DIVISION    2007 MAR 15  PM 1: 35

OLD ST. PAUL MISSIONARY BAPTIST CHURCH    DONNA PALMER PLAINTIFF
                                                      CIRCUIT COURT CLERK
                                                      CRITTENDEN COUNTY
V.                                                    NO. CV 2007-

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10                                              DEFENDANTS

## COMPLAINT

Comes now plaintiff, Old St. Paul Missionary Baptist Church, by and through its

lawyers, Rieves, Rubens & Mayton, and for its complaint states and alleges as follows:

## PARTIES

1. Plaintiff, Old St. Paul Missionary Baptist Church ("Church"), is a church and a

non-profit Arkansas corporation located in Crittenden County, Arkansas.

2. Defendant First Nation Insurance Group ("FNIG") is an insurance company

organized under the laws of a jurisdiction other than the State of Arkansas. Upon

information and belief, FNIG is not authorized to sell insurance, issue surety bonds, or

otherwise conduct business in the State of Arkansas. FNIG is not registered with either

the Arkansas Secretary of State or the Arkansas Insurance Commission and at all relevant

times has had no certificate of authority from the Arkansas Insurance Commission.

Accordingly, the Arkansas Insurance Commissioner and the Arkansas Secretary of State

are the authorized agents for service for FNIG.

3. Defendants AA Risk Management, Inc. and AA Communications, Inc. are

corporations organized under the laws of a jurisdiction other than the State of Arkansas,

and, upon information and belief, FNIG is not authorized to sell insurance, issue surety bonds, or otherwise conduct business in the State of Arkansas. AA Risk Management, Inc. and AA Communications, Inc. are not registered with either the Arkansas Secretary of State or the Arkansas Insurance Commission. Upon information and belief, AA Risk Management, Inc. and AA Communications, Inc. are third party administrators and agents of FNIG. The Arkansas Secretary of State is the authorized agent for service for AA Risk Management, Inc. and AA Communications, Inc.

4. Defendant Gwen Moyo is an individual and resident of the State of Louisiana. Moyo, upon information and belief, is an underwriter for and authorized agent of FNIG, and an authorized agent for AA Risk Management, Inc. and AA Communications, Inc. Moyo is not authorized to sell insurance or issue surety bonds in the State of Arkansas.

5. Defendant Craig Greene is an individual and resident of a jurisdiction other than the State of Arkansas. Greene, upon information and belief, is an officer and authorized agent for AA Risk Management, Inc. and AA Communications, Inc. and an authorized agent for FNIG.

6. John Does 1-10 are individuals whose identities are presently not known to plaintiff or its counsel. Said individual Doe defendants agreed to act and acted in concert with the other named defendants in the actions alleged in this complaint.

7. Doe Companies 1-5 are business entities whose identities are presently not known to plaintiff or its counsel, but either a) agreed to act and acted in concert with the other named defendants in the actions alleged in this complaint, or b) are entities affiliated and related to the named defendants and whose corporate veils should be pierced as alleged in this complaint, or both.

8. Upon information and belief, third party Templebloc, Inc. ("Templebloc ") is a Mississippi corporation.

## JURISDICTION AND VENUE

9. The Church is suing, in part, for declaratory relief and money damages under a surety bond provided and breached by defendant FNIG for a construction project being performed by Templebloc in Crittenden County, Arkansas. A true and correct copy of the performance bond is attached hereto as Exhibit A and incorporated by reference. A true and correct copy of the payment bond is attached hereto as Exhibit B and incorporated by reference. The Church is also asserting claims for tortious acts of the defendants that occurred, at least in part, within Crittenden County, Arkansas.

10. The court has jurisdiction of the parties and the subject matter, and venue is proper.

## FACTS

11. On or about February 16, 2006, the Church and Templebloc entered into a design-build construction contract ("Construction Contract") whereby Templebloc agreed to construct the Church's new worship center with a substantial completion date of September 30, 2006, and a final completion date of October 30, 2006. The contract price was 46% of $2,690,658.00. The February 16, 2006, Construction Contract superseded an earlier contract for the construction of the worship center. Both the earlier contract and the Construction Contract were drafted solely by Templebloc. The Church did not draft any provision of the Construction Contract. Any and all ambiguities within the Construction Contract must be construed against Templebloc and defendants.

3           Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

12. The project was financed through the Bank of Bartlett and payments under
the Construction Contract were to be disbursed to Templebloc by the bank on the
Church's behalf. The Bank of Bartlett is a federally insured lending institution and
required that Templebloc provide a payment bond and performance bond for the project.
The bonds were also required pursuant to Ark. Code Ann. § 18-44-504.

13. On or about March 15, 2006, FNIG issued a performance bond and a
payment bond for the project. A true and correct copy of the performance bond is
attached hereto as Exhibit A. A true and correct copy of the payment bond is attached
hereto as Exhibit B. Exhibit C is a true and correct copy of a letter from Gwen Moyo to
the bank offering to issue the bonds and incorporated by reference. Upon information
and belief, the sum of $121,079.65 was wired and paid to Moyo.

14. At all relevant times Moyo was the authorized underwriter and agent for
FNIG. In addition, at all relevant times, Moyo was also the authorized agent for AA
Communications, Inc. and AA Risk Management, Inc. (collectively, "AA") Accordingly,
AA Communications, Inc. and AA Risk Management, Inc. were also authorized agents of
FNIG at all relevant times.

15. At all relevant times, defendants held themselves out to be the authorized
agents of FNIG pursuant in part to the General Power of Attorney issued by FNIG and
signed by its President, Chairman, and CEO designating Moyo as its attorney in fact to
"ALL obligees." See Exhibits A and B. To the extent that any defendant lacked actual
authority, each at least had implied or apparent authority to act on behalf of FNIG. To the
extent that any defendant lacked actual authority, each at least had implied or apparent
authority to act on behalf of AA.

4          Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

16. At no relevant time were FNIG, Moyo, or AA authorized or licensed by the State of Arkansas to sell or issue surety bonds for projects within the State of Arkansas. Likewise, at no relevant time were FNIG, Moyo, or AA authorized or licensed by the State of Louisiana to sell or issue surety bonds.

17. Defendant Craig Greene and, upon information and belief, the individual Doe defendants and the Doe Company defendants, acted in concert with Moyo and also specifically agreed and conspired with Moyo to issue the bonds.

18. At no time did FNIG possess a certificate of authority to offer, sell, or issue surety bonds or insurance contracts in the State of Arkansas.

19. Upon information and belief, Moyo has issued numerous bonds on projects being performed by Templebloc, although plaintiff does not know which companies Moyo purported to represent on those other projects. The application for the bond was made by Templebloc, which, upon information and belief provided to Moyo copies of the February 16, 2006, Construction Contract. Although, plaintiff has not named Templebloc as a defendant, Moyo concert with Templebloc and also specifically agreed and conspired with Templebloc to issue the bonds contrary to Arkansas law.

20. In reliance upon the representations of FNIG, Moyo, and the other defendants, and the express terms of the bonds, payment for the bonds was made by the bank on the Church's behalf from the Church's construction loan account at the bank. The defendants further represented that Moyo and FNIG were authorized to issue the bonds in the State of Arkansas. Each of the representations regarding Moyo's authority, defendants' authority to sell or issue surety bonds in the State of Arkansas, the validity of the bonds, and the specific terms of the bonds themselves were material. In reliance upon

the representations of FNIG, Moyo, and the other defendants, and the express terms of
the bonds, the performed all of its obligations under the Construction Contract. The
Church's reliance upon the representations of FNIG, Moyo, and the other defendants,
including the terms of the bonds, was reasonable.

21. The Construction Contract required Templebloc to submit pay applications to
the Church on a monthly basis, and required the Church to make payment less a 5 percent
retainage. The Construction Contract also provided for change orders under certain
conditions. Templebloc performed work and submitted certified monthly pay
applications, including a schedule of values. In reliance upon Templebloc's
representations in its pay applications, the Church, via the bank, paid each pay
application and withheld the 5 percent retainage. Each pay application was also approved
by an architect.

22. During the course of the project, change order requests were made and each
request was resolved by agreement between Templebloc and the Church. Under the
terms of the bonds, defendants specifically waived notice of the change orders and no
change order materially altered the scope of the project.

23. Notwithstanding the Construction Contract, which also required Templebloc
to pay subcontractors and materialmen from the monies paid by the Church and
prohibited Templebloc from leaving the job site, Templebloc, without any notice to the
Church, failed to pay at least some subcontractors and materialmen, failed to complete
the project, and left the job site without notice on or about December 12, 2006. The
Church first learned that some subcontractors may have not been paid at about the same
time, when some subcontractors and materialmen began calling representatives of the

Church. At the time Templebloc left the job site, the project remained incomplete.
Defendants and their representatives have stated that they believe the project is about 70
percent complete. Templebloc has previously represented that the project is about 95
percent complete. In any event, the project remains unfinished. No work has been
performed by Templebloc, and no subcontractors have even returned to the job site, since
December 12, 2006. At the time, Templebloc walked off the project, the Church was still
holding roughly $175,000 of the construction contract price, which included the
retainage.

24. At the time Templebloc walked off the job site on December 12, 2006, there
were no outstanding change order requests, no outstanding requests for time extensions,
no outstanding requests for information, no unpaid pay applications, and no other reasons
for Templebloc to walk off the job. The Church had fully performed each and every
obligation required of it under the Construction Contract.

25. On or about December 13, 2006, the Church notified Templebloc, FNIG and
Moyo that Templebloc had failed to perform the Construction Contract and that the
Church was considering declaring a contractor default. On December 15, 2006, the
Church received a written response from "AA Risk Management" requesting information
about the Templebloc's default. A true and correct copy of the written response is
attached hereto as Exhibit D and incorporated by reference. Pursuant to Section 3.1 of
the bond, Templebloc, FNIG, and the Church agreed to meet on January 10, 2007 to
discuss methods of performing the Construction Contract. The Church provided all
information requested of it in the December 15 letter from AA that the Church had in its

possession and control. True and correct copies of the letters between the Church, FNIG, and AA, and Moyo are attached as Exhibits E-G and incorporated by reference.

26. The Church, Templebloc, the architect, and the defendants met on January 10, 2007. Instead of offering suggestions and discussing methods of performing the Construction Contract, Moyo falsely accused the Church's representatives of fraud and made numerous false and misleading statements to the Church. Among the statements made by Moyo:

a) stating specifically that the Church had deceived FNIG and failed to tell the Surety that the Construction Contract dated February 16, 2006, was for the completion of the worship center that had already been partially completed;

b) stating specifically that the Surety's obligation under the bond was limited to only five percent of the construction price;

c) after expressing surprise at learning that Templebloc had walked off the job on December 12, 2006, urging Mr. Blockett to lie by stating to him, "Don't you remember telling me that there were health and safety issues that caused you to leave the job," when in truth and in fact, Mr. Blockett had made no such statement and, even if such a statement had been made, Moyo knew that such a statement was untrue;

d) stating that the Church had failed to pay Templebloc, when Moyo knew that the statement was false;

e) stating that there were unresolved change orders and other disputes, when Moyo knew that the statement was false;

f) after stating that the Church had failed to pay Templebloc, then stating that the Church had overpaid Templebloc and all bond coverage was negated, when Moyo knew that the Church had made payments only in response to certified pay applications;

g) denying that defendants had any obligation under the bonds to the Church;

h) denying the existence and enforceability of the February 16, 2006 Construction Contract that was specifically approved by FNIG and Moyo prior to issuance of the bonds and specifically identified by date in the bonds;

I) yelling at and becoming demonstrably angry at the Church's committee members while making the foregoing false statements;

j) among other acts and omissions.

27. Following the meeting, Templebloc issued a "Notice to Comply" stating that it intended to finish the job, but also stating in the "Notice to Comply" that it was contingent upon the Church paying substantial sums in addition to the contract price and agreeing to approve some future undefined change orders. The Notice to Comply failed to contain any plan to resolve the issue of unpaid subcontractors and materialmen. The Notice to Comply also failed to contain a construction schedule. A true and correct copy of the Notice to Comply is attached hereto as Exhibit I and incorporated by reference.

28. Some Templebloc employees returned to the job site on January 22, 2007, but no subcontractors returned the number of employees was wholly insufficient to perform the Construction Contract. On January 29, 2007, Templebloc again left the job site and did not return.

29. On January 30, 2007, the Church sent written notice of default to Templebloc, which advised Templebloc that it had seven (7) days to provide adequate

9                Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

assurance that it would remedy its defaults and finish the project quickly. A true and correct copy of the January 30, 2007 Letter is attached as Exhibit J and incorporated by reference. The letter provided notice of the following defaults among others:

a) Templebloc having abandoned the job site a second time, thus not remedying its original default;

b) the failure to adequately staff the project;

c) the untimely performance of the Construction Contract by Templebloc;

d) the failure to pay subcontractors and materialmen and the receipt of a lien notice from Boaz Home Improvement Company, LLC;

e) the failure to provide a schedule for completion of the project or respond to the Church's requests; and,

f) other defaults and defects in Templebloc's performance.

30. The January 30, 2007 letter was copied to FNIG and provided notice to FNIG. On February 7, 2007, Templebloc responded but failed to provide any assurance that it could remedy the defaults in its performance. A true and correct copy is attached hereto as Exhibit K and incorporated by reference. Furthermore, on February 8, 2007, Templebloc, FNIG, and Moyo faxed a proposed "Assignment Agreement Construction Contract Proceeds," which identified "AA Communications, Inc." as the surety, provided that the Church would pay the remaining balance of the contract price to AA, provided that the Church would approve any change orders submitted, and appeared to modify the original contract price in its effect. A true and correct copy of the proposed assignment agreement is attached hereto as Exhibit L and incorporated by reference. Templebloc still failed to return to the job site or provide any assurance that the defects would be

10                      Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

remedied and the project finished in a timely manner under the terms of the Construction
Contract. At this point, no work had been performed on the project since prior to
December 12, 2006.

31. On February 9, 2007, the Church formally terminated the Construction
Contract, notified FNIG and Moyo that it was declaring a contractor default, and notified
FNIG that the Church would comply with all terms of the performance bond, including
paying the remaining contract balance to the surety or a contractor selected by the surety
in accordance with the terms of the bond. A true and correct copy is attached hereto as
Exhibit M and incorporated by reference. A true and correct copy of the Church's
response is attached hereto as Exhibit N and incorporated by reference.

32. On February 12, 2007, Templebloc responded but still failed to identify any
breach or defect in the Church's performance under the Construction Contract and failed
to provide any assurance the it could perform and complete the Construction Contract.
To the contrary, Templebloc reiterated its position that the Church would be required to
pay more than the contract price and still offered no schedule, no assurance that it could
provide staffing, no assurance that the subcontractor and materialmen issues would be
resolved, and no assurance that the other defects could be remedied. A true and correct
copy of the letter is attached as Exhibit O and incorporated by reference. Although
notified by the February 9, 2007 letter that the Church was terminating the Construction
Contract and declaring a contractor default, no response was by received by the Church
from FNIG. On February 13, 2007, Templebloc sent a letter to the Church advising that
AA was not the surety, but a third party administrator. A true and correct copy of the

11     Z:\Old St Paul - Templebloc\FNIG\101 complaint.doc

letter is attached as Exhibit P and incorporated by reference. The letter contained nothing to evidence the authority of AA or its relationship to FNIG.

33. After receiving no response from FNIG and Moyo, on February 19, 2007, the Church provided an additional written notice pursuant to Section 5 of the bond demanding that the surety elect how it intended to proceed under Section 4 of the bond, and also advising that the surety was required to make the election within 15 days. A true and correct copy of the letter is attached as Exhibit Q and incorporated by reference.

34. More than 15 days have elapsed since the additional written notice was provided to FNIG and Moyo pursuant to Section 5 of the bond and the surety has failed and refused to make its election under Section 4 of the Bond. Accordingly, FNIG is "deemed to be in default on [the] Bond" pursuant to Section 5. In addition, defendants have denied liability under the bond, at least in part. See Exhibit R, which is incorporated by reference Pursuant to Section 5 of the bond, the Church is entitled to enforce any remedy available to it.

35. Accordingly, defendants have materially breached the terms of the bonds and the Church is entitled to a declaration that defendants have materially breached the terms of the bonds.

36. Additionally, in truth and in fact, FNIG and Moyo never had any intention of honoring their obligations under the bonds when they were issued. Defendants at all relevant times, including when the bonds were illegally sold and issued and continuing through defendants' sham investigation and claims handling, intended to deny all liability regardless of the merits of the Church's claims.

Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

37. In truth and in fact, FNIG, Moyo, and the other defendants, as evidenced by
their statements and demeanor during the January 10, 2007 meeting and other actions,
has acted in bad faith. In addition to the statements and actions during the January 10,
2007, meeting, Moyo and the other defendants have:

a) asked and demanded that Templebloc manufacture false pay requests and
change order requests that never existed;

b) along with Templebloc, refused to either indemnify plaintiff or resolve the
outstanding lien and unpaid claims of the subcontractors and materialmen, with
knowledge that the result will be liens on the Church's property and liability for work and
material for which the Church has already paid Templebloc;

c) demanding that the Church pay money over and above the contract price for
work and items already contained in the Construction Contract, approved and paid
change orders and pay applications;

d) refusing to account for the monies already paid by the Church to Templebloc or
otherwise explain why subcontractors and materialmen have not been paid;

e) refusing to provide a schedule for completion of the project;

f) refusing to provide a copy of the general indemnity agreement between FNIG
and Templebloc;

g) demanding that the Church execute an assignment agreement to pay the
remaining construction proceeds

h) representing the surety to now be AA;

13     Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

i) refusing to provide any evidence current authority of Moyo, AA, or the other defendants to act on behalf of FNIG (other than that provided with the bonds in March 2006);

j) statements by FNIG's president and other employees of its home office in Toronto, Ontario, Canada, to subcontractors that Moyo lacks authority to represent FNIG and stating that the bonds are now void;

k) falsely stating that unidentified provisions of the "Arkansas Civil Code" preclude any liability on the bonds;

l) refusing to investigate the Church's claim in good faith, while seeking only to absolve defendants of any liability under the bond;

m) refusing to otherwise comply with the terms of the bond;

n) if the bonds validity is open to question, illegally, unlawfully, and fraudulently offering to sell, selling, and issuing the bonds;

o) converting the Church's payment for the bonds;

p) falsely representing AA to either be the surety of FNIG, while knowing that to be false;

q) if AA and Moyo lack authority to represent FNIG, falsely asserting that Moyo, AA, and the other defendants were authorized to sell or issue the bonds, and falsely claiming to be investigating the Church's claims on behalf of FNIG;

r) among other acts and omissions.

38. At least one lien has been filed with the Circuit Clerk, as a result of Templebloc's failure to pay a subcontractor. Despite the plain language of the performance and payment bonds, defendants have failed and refused to indemnify and

14          Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

hold harmless plaintiff from the lien claims – and refused to even acknowledge their obligation to do so.

39. As a result of the defendants' breaches, wrongful, unlawful, illegal, and tortious acts and omissions, the Church has suffered and will continue to suffer damages in an amount to be determined at trial, but which exceeds the amount required for federal diversity jurisdiction.

40. Each of the defendants knew or ought to have known, in the light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage to the Church and that he or she continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred, or intentionally pursued the course of conduct alleged for the purpose of causing damage to the Church, or both. As a result, the Church should be awarded punitive damages in an amount sufficient to punish defendants and to deter defendants and others from similar conduct in the future. The amount of punitive damages that should be awarded to the Church should be determined at trial but exceeds the amount required for federal diversity jurisdiction.

## COUNT I
## DECLARATORY RELIEF AND DAMAGES
## FOR BREACH OF SURETY BOND

41. Each of the foregoing allegations is incorporated by reference.

42. Plaintiff is entitled to a declaration that defendants have breached the terms of the bond and numerous provisions of the Arkansas Insurance Code that require coverage.

43. As a result of defendants' breach, plaintiff has suffered damages and will continue to suffer damages, which include:

a) additional costs in hiring a contractor to complete the project;

b) additional legal, design, professional and delay costs, both already incurred and to be incurred in the future;

c) the costs necessary to correct or repair defective and deficient work;

d) all costs and expenses associated with defending and resolving any and all claims by unpaid subcontractors and materialmen, including all legal fees and expenses associated with Templebloc's and FNIG's refusal to indemnify the Church from such claims, which constitutes a breach of the payment bond;

e) and any other element of damages that plaintiff is entitled to recover under the law.

44. As a result of defendants' actions, plaintiff has suffered and will continue to suffer damages, and is entitled to recover compensatory damages under this count in amount to be determined at trial, but which exceeds the amount required for federal diversity jurisdiction.

45. Pursuant to Ark. Code Ann. §§ 16-22-308 & 23-79-208, plaintiff is also entitled to recover its costs and expenses, including a reasonable attorneys' fee, as well as the penalty provided pursuant to § 23-79-208.

## COUNT 2
## COMMON LAW BAD FAITH

46. Each of the foregoing allegations is incorporated by reference.

47. Plaintiff is specifically identified as a direct beneficiary under the terms of the bond and entitled to pursue a direct action against the surety. As shown in the foregoing acts and omissions of FNIG, Moyo, and the other defendants, in their handling of plaintiff's claims under the bonds, engaged in affirmative misconduct without a good

16                       Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

faith defense, failed to investigate the claims or the circumstances in good faith, and affirmatively continued their fraud in the handling and investigation of the Church's claims. Defendants' conduct as alleged was and remains dishonest, oppressive or malicious, and represent an attempt by the carrier to avoid its liability under the bonds, and was motivated by spite and ill will – particularly in the case of Moyo. Again, as previously alleged, defendants acted jointly and in concert with each other and as part of a conspiracy to engage in the wrongful, tortious, and illegal conduct. The egregiousness of defendants conduct is illustrated by the fact that while defendants have accused the Church of overpaying Templebloc (despite the certified pay applications), defendants at the very same time were falsely and fraudulently trying to alter the Construction Contract, misidentifying the surety, and demanding that plaintiff pay all further construction proceeds to AA instead of the surety, which would have violated the specific terms of the bonds.

48. As a result of defendants' actions, plaintiff has suffered and will continue to suffer damages, and is entitled to recover compensatory damages under this count in amount to be determined at trial, but which exceeds the amount required for federal diversity jurisdiction.

49. Each of the defendants knew or ought to have known, in the light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage to the Church and that he or she continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred, or intentionally pursued the course of conduct alleged for the purpose of causing damage to the Church, or both. As a result, the Church should be awarded punitive damages in an

17      Z:\Old St Paul - Templebloc\FNIG001 complaint.doc

amount sufficient to punish defendants and to deter defendants and others from similar conduct in the future. The amount of punitive damages that should be awarded to the Church should be determined at trial but exceeds the amount required for federal diversity jurisdiction.

## COUNT 3
## FRAUD AND CONVERSION

50. Plaintiff incorporates by reference each of the foregoing allegations.

51. As part of inducing plaintiff and the Bank of Bartlett to pay the premium on the bonds and otherwise accept and rely on the bonds, defendants made the representations contained in the terms of the bonds themselves. Defendants never had any intention of performing any of their obligations under the terms of the bonds. The terms and conditions of the bonds were material.

52. In addition, FNIG and Moyo failed to disclose to the Church that neither was authorized to issue the bonds and that their offer, sale, and issuance was illegal and unlawful. FNIG and Moyo had an affirmative duty to disclose to the bank and the Church the fact that they were not licensed or authorized to issue the bonds in Arkansas, but failed to do so. This fact was material.

53. Defendants intended for plaintiff to rely upon the representations in the bonds and on defendants' omission the illegality of their actions in approving the bonds and paying the bond premiums of $121,079.65.

54. To the extent that defendants have misapplied or are otherwise unable to account for the premiums while disputing liability under the bond, defendants have wrongfully converted the premiums.

55. As a result of defendants' actions, plaintiff has suffered and will continue to suffer damages, and is entitled to recover compensatory damages under this count in amount to be determined at trial, but which exceeds the amount required for federal diversity jurisdiction.

56. Each of the defendants knew or ought to have known, in the light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage to the Church and that he or she continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred, or intentionally pursued the course of conduct alleged for the purpose of causing damage to the Church, or both. As a result, the Church should be awarded punitive damages in an amount sufficient to punish defendants and to deter defendants and others from similar conduct in the future. The amount of punitive damages that should be awarded to the Church should be determined at trial but exceeds the amount required for federal diversity jurisdiction.

## COUNT 4
## FRAUD IN INVESTIGATION OF CLAIMS

57. Plaintiff incorporates by reference each of the foregoing allegations.

58. During the course of investigating and handling plaintiff's claim on the bond, defendants have attempted to induce false statements from the contractor, its employees, and others, attempted to induce the contractor and others to generate false and fraudulent records, documents, and reports, and, upon information and belief, have generated false and fraudulent records, reports, and documents to deny liability under the bonds.

59. As a result of defendants' actions, plaintiff has suffered and will continue to suffer damages, and is entitled to recover compensatory damages under this count in

19        Z:\Old St Paul - Temple\box\FN\G001 complaint.doc

amount to be determined at trial, but which exceeds the amount required for federal diversity jurisdiction.

60. Each of the defendants knew or ought to have known, in the light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage to the Church and that he or she continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred, or intentionally pursued the course of conduct alleged for the purpose of causing damage to the Church, or both. As a result, the Church should be awarded punitive damages in an amount sufficient to punish defendants and to deter defendants and others from similar conduct in the future. The amount of punitive damages that should be awarded to the Church should be determined at trial but exceeds the amount required for federal diversity jurisdiction.

## JOINT AND SEVERAL LIABILITY

61. Plaintiff incorporates by reference each of the foregoing allegations.

62. Each of the defendants entered into a conscious agreement with the other defendants to pursue a common plan or design to commit each of the foregoing tortious acts. Each of the defendants actively participated in bad faith handling of plaintiff's claims under the bonds, the fraudulent acts, and the conversion.

63. Defendants are accordingly jointly and severally liable under each of the foregoing counts for all damages awarded to plaintiff.

## JURY TRIAL

64. Plaintiff demands a jury trial.

THEREFORE, plaintiff prays that the court:

a) declare that defendants have breached the performance and payment bonds, and that pursuant to Section 6 of the bond and without waiver of its claims against the surety, plaintiff is entitled to proceed with finishing the project and recovering damages as provided in Section 6 of the performance bond;

b) award compensatory damages to plaintiff against defendants in an amount to be determined at trial, but which exceeds the amount required for federal diversity jurisdiction;

c) award plaintiff the additional statutory penalty of 12 percent pursuant to Ark. Code Ann. § 23-79-208, along with its attorneys fees, expenses, and costs;

d) award plaintiff punitive damages against defendants in an amount to be determined at trial, but which exceeds the amount required for federal diversity jurisdiction;

e) award plaintiff its costs, pre-judgment interest, and post-judgment interest; and,

f) award plaintiff all other just and proper relief to which it may be entitled.

RESPECTFULLY SUBMITTED,
RIEVES, RUBENS & MAYTON

Lawrence W. Jackson (92194)
Attorney for Plaintiff
Rieves, Rubens, & Mayton
Post Office Box 1359
West Memphis, AR 72303
(870) 735-3420

21          Z:\Old St Paul - Templebloc\FN\G001 complaint.doc

## EXHIBITS

A     Performance Bond (26)

B     Payment Bond (23)

C     March 15, 2006 Letter from Moyo to Bank (22)

D     Dec. 15, 2006 Letter from AA Risk Management

E     Dec. 23, 2006 Letter from Church to Moyo/FNIG

F     Jan. 6, 2007 Letter from AA & Moyo

G     Jan. 8, 2007 Letter to Moyo/FNIG

H     Jan. 12, 2007 Email to Surety re: Interim Punch List

I     Jan. 16, 2007 Letter from Templebloc and Notice to Comply

J     Jan. 30, 2007 Letter to Templebloc and FNIG

K     Feb. 6, 2007 Letter from Templebloc

L     Proposed Assignment of Contract Proceeds

M     Feb. 9, 2007, Letter to Templebloc Terminating Construction Contract and
      Declaring Contractor Default

O     Feb. 12, 2007 Templebloc Response

P     Feb. 13, 2007 Clarification from Templebloc

Q     Feb. 19, 2007 Additional Written Notice (15 day letter)

R     Letter from FNIG denying liability

OCT 11 2005  09:15  A6007368695  TEMPLEBLOC INC  PAGE  05

**FNIG**

# FIRST NATION INSURANCE GROUP
## GENERAL POWER OF ATTORNEY

### NO: CA 1300310

*(Void unless numbered in red.)*

KNOW ALL MEN BY THESE PRESENTS, that First Nation Insurance Group has made, constituted and appointed, and by these presents does make, constitute and appoint

### GWEN MOYO, LOUSIANA

its true and lawful attorney-in-fact, for it and its name, place, and stead to execute on behalf of the said Company, as surety, bonds, undertakings, and contracts or suretyship to be given to

## Applicable to ALL Obligees

Provided that no bond or undertaking or amount of suretyship executed under the authority of this certificate shall exceed in amount the sum of One Hundred Million ($100,000,000.00) USD.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 5th day of October 2005

"RESOLVED that the Chairman of the Board, the Vice Chairman of the Board, the President, an Executive Vice President or a Senior Vice President or a Vice President of the Company be, and that each or any of them is authorized to execute Power of Attorney qualifying the attorney-in-fact named in the given Power of Attorney to execute in behalf of the Company bonds, undertakings and all contracts of suretyship; and that an Assistant Vice President, a Secretary or an Assistant Secretary be, and that each or any of them hereby is, authorized to attest the execution of any such Power of Attorney, and to attach thereon the seal of the Company

FURTHER RESOLVED, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed and in the future with respect to any bond, undertaking or contract of suretyship to which it is attached."

IN WITNESS WHEREOF, FIRST NATION INSURANCE GROUP has caused its official seal to be hereunto affixed, and these presents to be signed by one of its Vice Presidents and attested by one of its Assistant Vice Presidents this 5th day of October, 2005.

Attest:  
_____  
President

FIRST NATION INSURANCE GROUP  
By: _____  
Dr. Vijay Kumar, Chairman & CEO

PROVINCE OF ONTARIO  
CANADA

On this 5th day of October, 2005, before me personally came Dr. Vijay Kumar, to me known, who being by me duly sworn, did depose and say that he is a Chairman and C.E.O. of FIRST NATION INSURANCE GROUP, the corporation described in and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

_____  
LATA CURRIM, a Commissioner, etc.,  
City of Toronto, for Cross-Ewing / Pollack,  
Barristers and Solicitors,  
Expires February 4, 2007.

**PLAINTIFF'S EXHIBIT A**

I, the undersigned, FIRST NATION INSURANCE GROUP, Canada, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore that the Resolution of the Board of Directors set forth in the said Power of Attorney, is now in force.

Signed and sealed at the city of Toronto, Province of Ontario, Canada. Dated the 5th day of OCTOBER, 2005.

_____

Old St Paul 000026

04/12 1998  19:15   7410-35895    TEMPLEBLOC  INC    PAGE  05

*AIA Document A312*

# Performance Bond

Conforms with the American Institute of Architects, AIA Document A312.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):

    Templebloc, Inc.
    PO Box 1598
    Cleveland, MS 38732

SURETY (Name and Principal Place of Business):

    First Nation Insurance Group

OWNER (Name and Address):

    Old St. Paul MB Church
    504 South 8th St.
    West Memphis, AR 72301

CONSTRUCTION CONTRACT

    Date: February 17, 2006
    Amount: $2,690,659

    Description (Name and Location): New Worship Center – Old St. Paul MB Church
    504 South 8th St., West Memphis, AR 72301

BOND

    Date (Not earlier than Construction Contract Date):
    Amount: $2,690,659

    Modifications to this Bond:   ☒ None     ☐ See Page 2

| CONTRACTOR AS PRINCIPAL | SURETY |
|---|---|
| Company: (Corporate Seal) | Company: (Corporate Seal) |
| Templebloc, Inc. | First Nation Insurance Group |
| Signature: | Signature: |
| Name and Title: KENNETH BROCKETT CHAIRMAN/CEO | Name and Title: GWEN MOYD ATTY-IN-FACT |
| (Any additional signatures appear on page 2.) | |
| (FOR INFORMATION ONLY - Name, Address and Telephone) AGENT or BROKER: | OWNER'S REPRESENTATIVE (Architect, Engineer or other party): |

1    The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2    If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3    If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below, that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to

*15 day for conferred with Surety company & Contracted after Notification by OSP.*

perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default and   *Rights not waived*

3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4    When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

    1. *notified Contractor & Surety at their addresses ...*
    2. *Arrange a conference to discuss disagreement*
    3. *if all agree and extend reasonable time to complete*
    4. *Default adjust in a form diff sureties contractor*
       *Recoup after ... Old St Paul 000027*
    5. *The owner has agreed to pay the balance with*

TEMPLEBLDC INC                                           PAGE  47

**4.1** Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract or

**4.2** Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

**4.3** Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

**4.4** Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

  **.1** After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

  **.2** Deny liability in whole or in part and notify the Owner citing reasons therefor.

**5** If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

**6** After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

  **6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

  **6.2** Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

  **6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**7** The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

**8** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**9** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**10** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. ] return receipt

**11** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

**12 DEFINITIONS**

**12.1** Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

**12.2** Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

**12.3** Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

**12.4** Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | SURETY |
|---|---|
| Company:                    (Corporate Seal) | Company: FIRST NATION INSURANCE GROUP  (Corporate Seal) |
| Signature: | Signature: _Gwen Moya_ |
| Name and Title: KENNETH STREET CHAIRMAN, CEO | Name and Title: GWEN MOYO ATTY-IN-FACT |
| Address: TEMPLEBLDC INC. | Address: 261 OAKMONT DR. |
| 1418 S. DAVIS ST. | NEW ORLEANS, LA 70128 |
| P.O. BOX 15193 |  |
| CLEVELAND MS 38732 | |

Old St Paul 00002B

**FNIG**

# FIRST NATION INSURANCE GROUP
## GENERAL POWER OF ATTORNEY

### NO: CA 1300310

*(Void unless numbered in red.)*

KNOW ALL MEN BY THESE PRESENTS, that First Nation Insurance Group has made, constituted and appointed, and by these presents does make, constitute and appoint

## GWEN MOYO, LOUSIANA

its true and lawful attorney-in-fact, for it and its name, place, and stead to execute on behalf of the said Company, as surety, bonds, undertakings and contracts or suretyship to be given to

### Applicable to ALL Obligees

Provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount the sum of One Hundred million ($100,000,000.00) USD.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 5th day of October, 2005

"RESOLVED that the Chairman of the Board, the Vice Chairman of the Board, the President, an Executive Vice President or a Senior Vice President or a Vice President of the Company be, and that each or any of them is authorized to execute Power of Attorney qualifying the attorney-in-fact named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of suretyship; and that an Assistant Vice President, a Secretary or an Assistant Secretary be, and that each or any of them hereby is, authorized to attest the execution of any such Power of Attorney, and to attach thereto the seal of the Company.

FURTHER RESOLVED, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed and in the future with respect to any bond, undertaking or contract of suretyship to which it is attached."

IN WITNESS WHEREOF, FIRST NATION INSURANCE GROUP has caused its official seal to be hereunto affixed, and these presents to be signed by one of its Vice Presidents and attested by one of its Assistant Vice Presidents this 5th day of October, 2005

ATTEST:

Dr Paul Bhandari
President

FIRST NATION INSURANCE GROUP
By:
Dr Vijay Kumar, Chairman & CEO

PROVINCE OF ONTARIO        )
                           )  ss:
CANADA                     )

On the 5th day of October, 2005, before me personally came Dr Vijay Kumar to me known, who being by me duly sworn, did depose and say that he is a Chairman and C.E.O. of FIRST NATION INSURANCE GROUP, the corporation described in and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

LATA SURHOM, a Commissioner, etc.
City of Toronto, for Crom-Erving / Pollack
Barristers and Solicitors.
Expires February 4, 2007.

**PLAINTIFF'S EXHIBIT**
**B**

I, the undersigned, FIRST NATION INSURANCE GROUP, Canada, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney, is now in force.

Signed and sealed at the city of Toronto, Province of Ontario, Canada. Dated the 5th day of OCTOBER, 2005

*AIA Document A312*

# Payment Bond

Conforms with the American Institute of Architects, AIA Document A312.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Templebloc, Inc.
PO Box 1598
Cleveland, MS 38732

SURETY (Name and Principal Place of Business):
First Nation Insurance Group

OWNER (Name and Address):
Old St. Paul MB Church
504 South 8th, Ste.
West Memphis, AR 72301

CONSTRUCTION CONTRACT
Date: February 17, 2006
Amount: $2,690,659

Description (Name and Location): New Worship Center – Old St. Paul MB Church
504 South 8th St., West Memphis, AR 72301

BOND
Date( Not earlier than Construction Contract Date):
Amount: $2,690,659

Modifications to this Bond:

☒ None                 ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company:                      (Corporate Seal)
Templebloc, Inc.

Signature:
Name and Title: KENNETH CROCKET, CHAIRMAN/CEO
(Any additional signatures appear on page 2)

SURETY
Company:                      (Corporate Seal)
First Nation Insurance Group

Signature:
Name and Title: GWEN MOYA    ATTY - IN - FACT
AA COMMUNICATIONS, INC

(FOR INFORMATION ONLY – Name, Address and
Telephone) AGENT or BROKER:

OWNER'S REPRESENTATIVE (Architect, Engineer or other
party):

**1**   The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

**2**   With respect to the Owner, this obligation shall be null and void if the Contractor:

**2.1**   Promptly makes payment, directly or indirectly, for all sums due Claimants, and

**2.2**   Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

**3**   With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

**4**   The Surety shall have no obligation to Claimants under this Bond until:

**4.1**   Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

**4.2**   Claimants who do not have a direct contract with the Contractor:

**.1**   Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

Old St Paul 000024

.2    Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice, any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly and

.3    Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5    If the notice required by paragraph 4 is given by Owner to the Contractor or to the Surety, that is sufficient compliance.

6    When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1    Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2    Pay or arrange for payment of any undisputed amounts.

7    The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8    Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9    The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10    The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11    No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which

the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12    Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13    When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

14    Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15    DEFINITIONS

15.1    Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

15.2    Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

15.3    Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

CONTRACTOR AS PRINCIPAL                                SURETY
Company:                      (Corporate Seal)         Company: FIRST NATION INSURANCE    (Corporate Seal)
Signature:                                             Signature:
Name and Title: KENNETH DOCKERY/CHAIRMAN/CEO           Name and Title: GWEN MOYO / ATTY-IN-FACT
Address:    TEMPLEBLOC, INC.                           Address:
            141B S. DAVIS STREET                       AA COMMUNICATIONS, INC
            PO BOX 1548                                261 OAKMONT DR.
            CLEVELAND MS 38732                         NEW ORLEANS, LA 70122

Mar. 1, 2007; 8:59PM 128436695          TEMPLEBLOC INC          No. 5618 PAGE 5. 6
83/15/2806   14:28   2259260182          MARRIOTTBTR          PAGE 81

## AA COMMUNICATIONS, INC.
281 OAKMONT DR. NEW ORLEANS, LA, 70128   TEL. 504.296.8625  FAX. 225.928.8152

3/15/06

To:    Keith Collins
        Bank of Bartlett
        Cordova Tennessee

Fax:   662-843-6695
From:  Gwen Moyo
        Underwriter
        First Nations Insurance Group

Re:    Tempelbloc Performance/Payment Bond $2,690,659

Tempelbloc, Inc., has been approved for a Performance/Payment
Bond in the amount of $2,690,659 for the project known as "Old
St. Paul MB Church", located in West Memphis Arkansas.

I am the underwriter for First Nation Insurance Group Company
and require that the bond payment of $121,079.65 be wired to:

Hibernia Bank       Routing #: 065000090
313 Carondelet St.    Account#: 812361910
New Orleans, LA 70130  Beneficiary: AA Communications, Inc.

Upon receipt of payment, the "Performance/Payment Bond" will
be immediately forwarded to Tempelbloc, Old St. Paul MB
Church, and the Bank of Bartlett.

Sincerely,

Gwen Moyo



**PLAINTIFF'S EXHIBIT**
C

Old St Paul 000022

# AA Risk Management
## 10043 Jefferson Highway
## Baton Rouge, LA 0809
## (225) 295-9943
## FAX (225) 295-9983

December 15, 2006

**Old Saint Paul M. B. Church**
Attn: Frederick S. Anthony, Pastor & Donnaire Granger, Building Committee Chairman
504 South 8th Street
West Memphis, AR 72301

### Re: Bond Default Request on the New Worship Center

Dear Gentlemen,

We have received your request for the bonding company to assist in the completion of the above listed project. In order for us to proceed we will need to have available to us the following list of items:

1. All approved construction Plans and specifications
2. All construction contracts, change orders, addenda's, amendments and revisions.
3. All pay requests that have been funded to date
4. All inspection Histories related to this project.
5. A list of all known subcontractors that have been working on the project.
6. A list of all subcontractors that have completed their work, but have filed non-payment notices with the Owner.
7. All financial records that the Owner has related only to the construction of this project.

It is important that we schedule a meeting at the site as soon as possible. Please notify us when all of the above documentation is ready and when we can meet. We are interested in taking the correct action to complete this project as soon as possible.

If you have any questions feel free to contact me directly at 954-658-6791

Sincerely,

*Craig Stephen Greene*
Electronically signed to avoid delay
**Craig Greene**
**Director of Construction**
**Claim Division**


PLAINTIFF'S
EXHIBIT
D

04-12-07,    12:07    From-Rieves,Reubens, Mayton          +8707358825          T-277   P.032/067   F-487

Reminder: AOL will never ask you to send us your password or credit card number in an email.  This message has been scanned for known viruses.

From:   fsa123@aol.com

To:    gwentel@yahoo.com, craiggreene@bellsouth.net, licong18@hotmail.com

Cc:    drangerus03@yahoo.com, FSA123@aol.com

Date:   Sat, 23 Dec 2006 4:31 PM

---

### OLD SAINT PAUL M. B. CHURCH
### 504 SOUTH 8TH STREET
### P. O. BOX 1116
### WEST MEMPHIS, AR 72303
### 870-735-0954-PHONE
### 870-732-5168-FAX

**December 23, 2006**

**To: First Nation Insurance Group**
**Attn: Gwen Moyo, Attorney-In-Fact**
**Craig Greene, Director of Construction, Claim Division**
**AA Risk Management**
**10043 Jefferson Highway**
**Baton Rouge, La 0809**

**Re: Bond Default Request on the New Worship Center**

*Dear Ms. Moyo & Mr. Greene:*

*The Old Saint Paul's Building Committee and I thank you for meeting with us on Tuesday, December 12, 2006 at 10:00am and formally hearing our concerns regarding the aforementioned reference. We are hoping the information you requested and received from us aided and substantiated our concerns that Templebloc, Inc., P. O. Box 1598, Cleveland, Ms. 38732, Contractors for the New Worship Center-Old Saint Paul M. B. Church has failed to supply enough workers and make payments when required to its sub-contractors and suppliers.*

*As per your request, we have contacted sub-contractors and vendors known to us and requested them to file with you a formal sworn statement of accounts. Please notify us of anything else we can do to assist you in this matter. Again, thank you and the Committee looks forward to your response and acknowledgement to this correspondence.*

*Sincerely,*

*Donnaire **Granger, Building Committee Chairman***
*Frederick S. Anthony, Pastor*



**Check out the new AOL.** Most comprehensive set of free safety and security tools, free access to

http://d01.webmail.aol.com/22250/aol/en-us/mail/display-message.aspx          12/23/2006

,04-12-07    12:07    Case 3:07-cv-00043-LPR   Document 1   Filed 04/13/07   Page 36 of 89
                     From-Rieves,Reubens, Mayton        +8707358825        T-277   P.033/067   F-487

Page 2 of 2

millions of high-quality videos from across the web, free AOL Mail and more.

JAN. 8. 2007  4:55PM                                         No.5615   P. 2 3

# AA Risk Management

101 Convention Center Dr., Ste. 700, Las Vegas, NV 89109
TEL. 504.296.6625  FAX  225.763.9584

January 06, 2007

Old Saint Paul M. B. Church
504 South 8th St.
West Memphis, AR 72301
Attn: Frederick S. Anthony, Pastor & Donnaire Granger, Building Committee Chairman

Re:   Claim# 05012600-77
      Client: TempleBloc, Inc.
      Company: First Nation Insurance

Dear Reverend Anthony:

This will confirm our meeting stated for Wednesday, January 10, 2007, at 1:00 pm; in order that we can complete our risk assessment and recommendations on your claim.

Thanking you in advance, I remain.

Sincerely,

Gwen Moyo

Cc:   Craig Greene
      Construction claims

      Daniel S. Esparza
      FNIG

      Erik Esparza, P.E
      FNIG

      David Friedman, PhD
      FNIG



PLAINTIFF'S
EXHIBIT
F

04-12-07   12:07   From-Rieves,Reubens, Mayton          +8707358825          T-277   P.035/067   F-487

Jan. 8. 2007  4:56PM                                    No.5615   P. 3/3

# OLD SAINT PAUL M. B. CHURCH
## 504 SOUTH 8TH STREET
## P. O. BOX 1116
## WEST MEMPHIS, AR 72303
### 870-735-0954-PHONE
### 870-732-5168-FAX

**January 8, 2006**

To: First Nation Insurance Group
Attn: Gwen Moyo, Atty-In-Fact
       AA Communications, Inc.
       261 Oakmont Drive
       New Orleans, La 70128

Re: New Worship Center-Old Saint Paul M. B. Church
       Claim# 05012600-77
       Client: Templebloc, Inc.

Dear Gwen Moyo:

Thank you for confirming the meeting with us on Wednesday, January 10, 2007, at 1:00pm. We look forward to expediting this matter and moving forward with the completion of our new sanctuary in a rapid manner as per our previous conversation. We do anticipate First Nation Insurance to promptly and expeditiously proceed as outlined in section #4 of the performance bond.

Again, thank you.

Sincerely,

Frederick S. Anthony

PLAINTIFF'S
EXHIBIT
6

Interim Punch List for OSP Proj.                                                                    Page 1 of 1

Reminder: AOL will never ask you to send us your password or credit card number in an email.  This message has been scanned for known viruses.

| | |
|---|---|
| **From:** | dgrangerus03@yahoo.com |
| **To:** | craggreene@bellsouth.net |
| **Cc:** | blockotted@hotmail.com,  templebloc@yahoo.com,  gale-tolbert@abcglobal.net,  fsa123@aol.com,  atruegeminteriordesigns@yahoo.com,  dee28se@yahoo.com |
| **Subject:** | Interim Punch List for OSP Proj. |
| **Date:** | Fri, 12 Jan 2007 3:13 PM |
| **Attachments:** | |

As per the surety's request at the 1/10/07 meeting, attached is an interim punch list of the things to be done for the Old St. Paul project. Should you feel a need to respond, please do so at the following:

> Old St. Paul MB Church
> Attn: Donnaine Granger/Frederick Anthony
> PO Box 1116
> West Memphis, Ar 72301
> 870 732 - 5168 (fax)
>
> -- or --
>
> email: dgrangerus03@yahoo.com or fsa123@aol.com

Thanks for your cooperation.

dmg



04-12-07   12:07   From-Rieves,Reubens, Mayton                    +8707358825          T-277   P.037/067   F-487

1.12/2007

# Punch List for OSP Proj.

### Exterior:

- Perform general clean-up of site. Remove and dispose of all rubbish and debris left on site.
- Correct all stucco/ElFS work performed to date. There are several areas that have been identified as "poor workmanship" in the quality of the finish work.
- Replace and protect damaged insulation that has already been installed.
- Properly seal and protect roof and exposed material on the exterior of the building.
- Properly secure construction site. (Fence is very weak and leaning; in some areas it is totally down).
- Remove and replace defective/damaged gypsum board.

### Interior:

- Perform general clean-up of site interior. Remove and dispose of all rubbish and debris inside of building. Including, but not limited to, areas where trash and debris have been left in sections such as walls, ceilings, and under stairwells.
- Remove and replace defective/damaged gypsum board, sheetrock, metal studs, insulation, etc.
- Drain elevator shaft for preparation of elevator installation.
- Tighten down tensioning x-wire in roof of sanctuary prior to conclusion of sprinkler system/electrical/ceiling grid work in same area.
- Identify and properly seal all daylight areas in the building.
- Identify and properly seal all leaking areas in the building.

### General:

- Properly store and protect all material left on site.
- Bring all purchased materials that were removed from site back on site. Then properly store and protect.
- Provide an account/inventory of all purchased/stored materials (i.e. carpet, tile, wood floor, trim, HVAC units and components, etc.

JAN-13- 2007  1:54PM                                                No 3645   P. 2



# Templebloc, Inc.

### General Contractors . Construction Manager
Email: blockmled@hotmail.com

January 16, 2007

Mr. Craig Greene
Director of Construction
Claim Division
AA Risk Management
10043 Jefferson Highway
Baton Rouge, LA  08090

RE:  Old St. Paul MB Church - Our Project #: 040506070SP
     504 S. 8th Street
     West Memphis, AR

                                    *(Sent Via Email CraigGreene@bellsouth.net)*

Dear Mr. Greene;

Please find enclosed our Notice to Comply Plan of Action on the above referenced project. This Plan of Action encompasses a complete scope of work in order to complete the interior and exterior finishes as requested. However, in order to fulfill and complete the Plan of Action we are also forwarding to you Change Order requests for approval identifying scopes of work that are complete and change order request for work to be completed if approved.

Overall, this Plan of Action cannot be completed without the additional funds and Templebloc, Inc. cannot take responsibility for this Plan of Action without additional funds from the Owner.

We hope this satisfies your request for the Plan of Action and Change Order request(s) for approval. As noted in the Plan of Action, there may yet be unforeseeable conditions remaining unknown in order to complete the Project according to the Plan of Action.

Should you require any additional information or modifications additions/deletions, please notify us immediately.

Until then, I remain,

Sincerely,
TEMPLEBLOC, INC.

By: Kenneth Blocken
Its: President/CEO

C:  Owen Moya
    Gary Tolben
    Clifton Lipinen



P. O. Box 1598 . Cleveland, MS 38732 - (002) 843-9559 . 662 843-2693 fax

Jan-14, 2007  1:53PM                                         No 3645   P. 3.4

## Notices to Comply

Detailed Grouped by Each Number

| | | |
|---|---|---|
| **Old St. Paul MB Churc** | **Project # 040SP** | **Templebloc, Inc.** |
| 504 S. 8th Street | Tel 662-843-0636   Fax: 662-843-0696 | |
| West Memphis, AR 72301 | | |

| **Number: 005** | | | **Date: 1/16/2007** |
|---|---|---|---|
| To: | Old St. Paul MB Church | **From:** | Templebloc, Inc. |
| | Donnare Grang | | Tad Bockem |
| | West Memphis, AR 723 | | 1618 S. Davis Street |
| | | | Cleveland, MS 35732 |

| **Subject** | **Notice to Comply Type** | **Location** |
|---|---|---|
| 040SP Plan of Action | PROJECT COMPLETION | 504 S. 8th Street West Memphis AR 72301 |

**Reference:**                                                    **Due By:**  1/17/2007
PLAN OF ACTION

**Details and Action Required**
040SP PLAN OF ACTION

Listed below you will find the proposed Plan of Action for the Old St. Paul MB Church New Worship Center Project. We have tentatively outlined our proposed Plan of Action to complete the project as per our agreement and pending approval of all Change Orders submitted. We anticipate to complete the scope of work within 120 business days from the Approval Date of this Plan of Action.

### SCOPE OF WORK EXTERIOR:

01. Clean up exterior of the site of all debris.
02. Reset and resecure anchors around job site.
03. Send out Notices to Comply to all subcontractors as it relates to corrective work and poor workmanship of finish work in place. This includes A/B A Stucco dba Albert Alexander, Economy Remodeling & Construction for Roofing and Trim Out
04. Install all remaining exterior doors and garage door on carport.
05. Install all exterior concrete sidewalks, wheelchair ramps HVAC pads, & driveways pending approval of change order
06. Paint North blocks will permanent weather conditions.
07. Replace all torn and/or defective exterior gypsum board prior to completing stucco work on West and North Side of Building
08. Complete exterior gas lines to HVAC Units.
09. Complete all exterior electrical.
10. Make Fire Sprinkler System Tap to 8th Street to extend to building Fire Sprinkler room
11. Install all exterior HVAC package units.
12. Exterior final cleanup.

*.* All other required exterior miscellaneous scopes of work and appurtenances as required per our agreement and plans

### SCOPE OF WORK INTERIOR

01. Remove all debris from interior of building and organize all subcontractor equipment and material properly
02. Send out Notices to Comply to all subcontractors requesting updated inspections and schedules identifying the balance of scope of work to be completed regulating deadlines
03. Completion of Sprinkler System
04. Completion of Electrical Wiring, Switch Gear, Permanent Power, Interior Lighting, Outlets, Switches and all other Electrical work as required
05. Completion of HVAC interior HVAC system units, securing return air grilles, diffusers, thermostats and all other HVAC work as required
06. Completion of Plumbing complete toilet, gas lines, setting plumbing fixtures and all other plumbing work as required
07. Complete wall insulation.
08. Complete installation of sheetrock on walls and ceilings as required
09. Complete Tape, Sanding, and Finishing and Painting as required



Notices to Comply
Detailed. Grouped by Each Number

10  Complete ceiling grid & acoustical ceiling tiles
11  Install ceramic tile in restrooms
12  Install Vinyl Composition Tile
13  Install Carpet
14  Complete interior painting.
15  Install all doors and hardware

COMPLETE ALL REQUIRED SCOPE OF WORK AS REQUIRED IN ORDER TO OBTAIN CERTIFICATE OF OCCUPANCY

PROJECTED TIME FRAME FOR COMPLETION 130 DAYS

PLEASE NOTE THIS PLAN OF ACTION IS SUBJECT TO CHANGE DUE TO UNFORSEEABLE CONDITIONS OR ANY ACTS OF GOD
OR PENDING OR NEW CHANGES IN THE SCOPE OF WORK THAT ARE NOT IDENTIFIED ON THE PLANS

Signature                                          Signed Date

Prolog Manager      Printed on    1/7/2007    PM7 Sample                          Page 2

04-12-07   12:08   From-Rieves,Reubens, Mayton                    +8707356825                    T-277  P.041/067   F-487

Feb. 6. 2007  4:21PM                                                                    No. 770   P. 4.6

## OLD ST. PAUL M.B. CHURCH
### 504 SOUTH 8TH STREET
### P.O. BOX 1116
### WEST MEMPHIS, ARKANSAS 72303
Phone: 870.735.0954
Fax: 870.732.5168

January 30, 2007

Kenneth Blockett, President/CEO
Templebloc, Inc.
P.O. Box 1598
Cleveland, MS 38732

Re:  Notice of Default

Dear Mr. Blockett:

We received the "Notice to Comply Plan of Action" on the construction of the new
worship center for Old St. Paul Missionary Baptist Church ("Church") and note that
employees of Templebloc, Inc. ("Templebloc") returned to the job site on Monday,
January 22, 2007, after having left the job site on or about December 12, 2006.  Although
we note that Templebloc issued a mobilization order to its subcontractors, the
subcontractors are still apparently unwilling to return to the job site.  As of today, January
29, 2007, Templebloc apparently had no one at the job site.  As you know, the contract
between the Church and Templebloc requires Templebloc to furnish a sufficient number
of personnel to complete the project, but it appears that Templebloc still has not done so.

The Church and Templebloc entered into a contract dated February 16, 2006, whereby
Templebloc agreed to construct the worship center as a design/build project and
substantially complete the project on or before October 30, 2006 ("Contract").  As you
also know, First Nation Insurance Group ("Surety") supplied a performance bond in the
amount of $2,690,659.  The Church expects you to complete the project as soon as
possible in accordance with the plans, which are part of the Contract.

Obviously, given that the project is still not completed, Templebloc has failed to fulfill its
obligations.  Templebloc also left the job site on or about December 12, 2006, and
returned on or about January 22, 2007, but has left the job site again on January 29, 2007.
In addition, the Church has recently received a notice of lien from Boaz Home
Improvement Company, LLC, and there are apparently other subcontractors who may not
have been paid by you.  Each of these, and the failure to provide enough workers, is a
material breach of the Contract and grounds for default under Article 10.



04-12-07    12:08    From-Rieves,Reubens, Mayton                    +8707358825              T-277   P.042/087   F-467

Feb. 6. 2007  4:22PM                                                    No.1799   P. 5 6

Page 2 of 3
January 30, 2007

Pursuant to paragraph 10.1 of the Contract and paragraph 3.1 of the Bond, the Church has previously notified Templebloc and the Surety that Templebloc is in breach of its obligations under the contract and that the Church is considering declaring a Contractor Default, as defined in the Bond. As a result, representatives from the Church met with Ms. Moyo in December and both Templebloc and the Surety on January 10, 2007. Templebloc issued its Notice to Comply and returned to the job site on January 22, 2007, but its subcontractors did not. As of today, January 29, 2007, Templebloc has again left the job site. Templebloc has still failed to cure its defaults and breaches, or even offered a schedule or plan for doing so. Accordingly, this letter serves as the Church's second notice of default pursuant to paragraph 10.2.2 of the Contract.

Notwithstanding the statements made at the meeting on January 10, 2007, there are no outstanding requests for change orders or unpaid pay requests. Although we requested that you provide us with a list of the purported outstanding change order requests, we have still not received any. We have also not been provided with a list of any unpaid pay requests.

In sum, demand is made that Templebloc: a) immediately furnish a schedule for completion of the project; b) pay all unpaid subcontractors and materialmen, immediately, unless there is a legitimate basis for refusing to pay; c) provide enough workers and subcontractors to finish the project; d) account for all payments received from the Church to date; and e) perform all of its other obligations under the Contract. If Templebloc is unable or unwilling to do so within seven (7) days, we will declare a Contractor Default pursuant to the Contract and the Bond and demand that the Surety complete the work pursuant to Article 4 of the Bond. More than 20 days have elapsed since you and the Surety were first notified that the Church was considering declaring a Contractor Default. However, if either you or the Surety believe that the Church has failed to comply with any notice provision of the Contract or the Bond, please advise.

Nothing in this letter should be construed as a waiver of any right the Church may have under either the Contract or the Bond. The Church specifically reserves all rights it may have under the Contract and the Bond. Please also consider this letter notice that the Church intends to seek damages for the delay in completing the project when it is finished and for any other breach committed by Templebloc. However, it is simply in everyone's interest that the project be finished as soon as possible.

Very truly yours,

Rev. Frederick S. Anthony

No.3730   P. 5.6

Feb. 6. 2007  4:30PM

Page 3 of 3
January 30, 2007

cc:

Gwen Moyo
Attorney in Fact
261 Oakmont Drive
New Orleans, LA 70128

Craig Greene
Director of Construction
Claims Division
AA Risk Management
10043 Jefferson Highway
Baton Rouge, LA 08090

Feb  6, 2007  3:09PM                                                    No-0119   P. 2/2



# Templebloc, Inc.

### General Contractors • Construction Manager
Email: blockenled@hotmail.com

February 6, 2007

Mr. Frederick S. Anthony, Pastor
Old St. Paul MB Church
504 S. 8th Street
PO Box 1116
West Memphis, AR 72303

      RE: Notice of Default Response

                                          *(Sent Via Email)*

      **PROJECT:**    **Old St. Paul MB Church Construction**
                       **Our Project #: 0607OSP**

Dear Mr. Anthony, Pastor:

We are in receipt of your letter dated January 30, 2007 as it relates to the above referenced project Notice of Default. The week of February 6, 2007, Templebloc, Inc. along with several of our trades and sufficient workers will be returning to job site to continue working towards the completion of the Scopes of Work per the Contract and according to referenced plans.

Templebloc, Inc. is working with the AA Risk Management team to bring get the project back on track to include a joint effort to work with subcontractors and material-men. Additionally, in conjunction with the risk management and the surety representatives, we are actively prioritizing subcontractor deficiencies and scope of work issues as they relate to existing payment structures of the subcontractors and material-men on-site. This process includes the percentages of work completed and the reconciliation of the outstanding monies owed on the approved schedule of values tied to the Standard Subcontract Agreements. All suppliers and subcontractors are required to comply with Section 14.0 of the Subcontractor Agreement and work deficiencies including improper invoicing will be addressed per Section 14.0 and in accordance with Arkansas civil code, as well as the course of managing the work to complete and reconciliation of accounts.

We are currently addressing the work to complete which includes a new staffing plan and the coordination of working with the surety to have a third party manager on-site to assist in the completion and reconciliation of the project scope.

In reference to the receipt of a Notice of Lien from a company named John Widener d/b/a Boaz Home Improvement Company, LLC and Albert Alexander d/b/a A & A Stucco Company. Templebloc, Inc. and the surety third party administrator are working to resolve the Lien notice as it was filed inaccurately and wrongful. We have responded to that Notice of Lien, as well as requested that the Notice of Lien be immediately removed due to the fact Templebloc, Inc. nor any of our associates is familiar with John Widener d/b/a Boaz Home Improvement Company, LLC and Albert Alexander d/b/a A & A Stucco Company nor do we or did we have a contract with any of the aforementioned companies.

In an effort to fulfill our obligations per our contract, we are working with AA Risk Management so that we may continue to work towards the completion of this project. Should you have any further questions, or concerns please notify the undersigned.



P. O. Box 1598• Cleveland, MS 38732 • (662) 843-9559 • (662) 843-6695 Fax

Page 2 cont'd
Mr. Frederick S. Anthony, Pastor
Old St. Paul MB Church
Notice of Default Response
February 6, 2007

Until then, I remain.

Sincerely,
TEMPLEBLOC. INC

By: Kenneth "Ted" Blockon
Its: President/CEO

CC:     AA Communications, Inc.
        First Nations Insurance
        Gwen Mayo
        Dan Esparza
        Craig Greene

# Templebloc, Inc.

## ASSIGNMENT AGREEMENT
## CONSTRUCTION CONTRACT PROCEEDS

### AA COMMUNICATIONS, INC.

### Assignment Agreement Number:  __TB06-1025__

**Templebloc, Inc.** (hereinafter referred to as the "Assignor"), has entered into an agreement with Old St. Paul MB Church, West Memphis, AR (hereafter referred to as the "Owner"). The terms of this agreement are stated in Construction Contract, Dated May 7, 2004.

Per the Terms of the General Indemnity Agreement with AA Communications, Inc. _FNIG_ (hereafter referred to as the "Assignee", "risk manager", "Third Party Administrator", or "TPA"), and to keep the Terms of the Construction Contract (hereafter referred to as the "Project Agreement") and keep the payment and performance bonds in place, the TPA requires the remainder of the funds on contract be Assigned per the terms of this Agreement to satisfy the terms of the Project Agreement.

**Terms of Agreement**

1.  Assignor does hereby assign, transfer, and set over to Assignee (AA Communications, Inc.) all right, title, and interest in the Assignor's Construction Contract proceeds on balance with the Owner or Owner's financing institution (bank). Assignment terms will be in place through the remainder of the Project Agreement.

    Construction Account No.:_____0406QSP_____
    (hereinafter referred to as "Construction Proceeds")

2.  Total Contract Amount  $2,890,658.  Amount on deposit available for distribution, one hundred seventy four thousand nine hundred twenty-one and 55 cents ($174,921.65).

3.  Upon the submitted and approved Pay Application by the Assignor to the Owner, all Construction Proceeds will be assigned and deposited on account with Assignee for the completion of the Project Agreement. The Financial Institution with funds on deposit will make payments to Assignee on the balance of all contract funds due Assignor. (Funds include those that are due now and become due in the future to include original and change order revenue on the project. Revenues include those not approved or completed.) The amount paid to the Assignee will be the face value of the Payment Application submitted by the Assignor, plus accrued interest.

4.  The Owner will make direct payments to the Assignee as designed in Appendix A.

5.  The Assignor authorizes and directs the Financial Institution to pay the negotiable value of the Payment Applications, as instructed by the Owner regardless of alleged defenses. Financial Institution will be provided a Conditional Lien Release by the Assignor for the progressive payments of the Project Agreement.

PLAINTIFF'S
EXHIBIT
L

Page 2

    8.  This assignment remains in effect until completion of the Project Agreement and the acceptance of the final project by the Owner and the Release and Close of the bonds by the Assignee

    7.  Signed and dated at _____ this day of 20____.

**AGREED**

TEMPLEBLOC, INC.

(Assignor's Signature)
Templebloc, Inc.

PO BOX 1475 CLEVELAND, MS 38732
(Assignor's Address)

**AA COMMUNICATIONS, INC.**

_____
(Assignee's Signature)
AA Communications, Inc.

_____
(Assignee's Address)

**Old St. Paul MB Church**

_____
(Owner's Signature)
Authorized Signature

_____
(Owner's Address)

Page 3

## Corporate Acknowledgement

### ASSIGNOR

I, Kenneth Blockett, certify that I am the President and CEO of Templebloc, Inc., the corporation named as principal to this assignment and Assignor, that who signed this agreement on behalf of the principal was the President, that said agreement was duly signed on behalf of the corporation by authority of its governing body and is within the scope of its corporate powers.



(Corporate Seal)
(Signature)

04-12-07    12:08 Case 3:07-cv-00043-LPR   Document 1   Filed 04/13/07   Page 52 of 89
From-Rieves,Reubens, Mayton                 +8707358825                T-277   P.049/067   F-487

Feb. 8. 2007  5:15PM                                        No.1774   P. 5.6

Page 4

## Financial Institution Acceptance

The _____, as witnessed by the signature of a duly authorized
officer, recognizes the assignment of the Assigned Certificate of Deposit in the amount
of
_____ dollars ($            ) this _____day of_
_____, 2007.

The Financial Institution agrees that this assignment has been established to protect the
interests of the Assignee and the Owner

_____
(Name of Financial Institution)

_____
(Authorized Signature)

_____
(Address of Financial Institution)

Feb. 8. 2007  5:25PM                                          No.3794   P. 6. 6

---

Page 5

## Owner Acceptance

The Old St. Paul Church (Owner) accepts the assignment of Assignment Agreement No. TB06-1025, this _____ day of _____, 2007.


Accepted by:
_____
(Signature of Authorized Owner Representative)



Certified by:
_____
(Signature of Fiscal Officer)

---

### OLD ST. PAUL M.B. CHURCH
### 504 SOUTH 8TH STREET
### P.O. BOX 1116
### WEST MEMPHIS, ARKANSAS 72303
### Phone: 870.735.0954
### Fax: 870.732.5168

February 9, 2007

Kenneth Blockett, President/CEO
Templebloc, Inc.
P.O. Box 1598
Cleveland, MS 38732

Re:     Notice of Termination of Contract
        Declaration of Contractor Default

Dear Mr. Blockett:

Please find the enclosed copy of the letter dated February 2, 2007, from Mr. Baretz,
attorney for Boaz Home Improvement Co., LLC ("Boaz"), and Albert Alexander d/b/a A
& A Stucco ("A & A"), along with the first page of the lien filed by Boaz and A & A.
Demand is made that Templebloc resolve the lien issue. We would call your attention to
Ark. Code Ann. § 18-44-118, which provides for the release of the lien upon the filing of
an adequate bond with the circuit clerk if Templebloc disputes the claim of Boaz and A &
A. In addition, the Church reserves the right to recover any damages, including its legal
expenses, associated with defending the lien claims.

Although the Church appreciates your letter of February 6, 2007, no schedule for
completion of the project or correction of deficient work has been received. In addition,
the Church has still not received an accounting for the sums paid by the Church,
including sums that Templebloc should have paid to its subcontractors for work
performed. Given that there are no outstanding change order requests and no outstanding
pay requests, and the fact that Templebloc has now left the job twice, references to
Section 14 of the Contract between the Church and Templebloc have no bearing on the
dispute – particularly given the delay caused by Templebloc's failure to perform its
obligations under the Contract. In addition, there are still not enough workers to
complete the project in a timely manner and Templebloc is still unable to assure us that
all subcontractors who should be paid have been paid. Obviously, given that the project
is still not completed, Templebloc has failed to fulfill its obligations. Templebloc also
left the job site on or about December 12, 2006, and returned on or about January 22,
2007, but left the job site again on January 29, 2007. No explanation has been provided
for Templebloc leaving the job site on either occasion. Each of the foregoing, and also
the failure to provide enough workers, is a material breach of the Contract and grounds
for default and termination under Article 10.

PLAINTIFF'S
EXHIBIT
M

Page 2 of 3
February 9, 2007

Pursuant to paragraph 10.1 of the Contract and paragraph 3.1 of the Bond, the Church has previously notified Templebloc and the Surety that Templebloc is in breach of its obligations under the contract and that the Church is considering declaring a Contractor Default, as defined in the Bond. As a result, representatives from the Church met with Ms. Moyo in December and both Templebloc and the Surety on January 10, 2007. Templebloc issued its Notice to Comply and returned to the job site on January 22, 2007, but its subcontractors did not. As of January 29, 2007, Templebloc had again left the job site and had still failed to cure its defaults and breaches, or even offered a schedule or plan for doing so. Accordingly, Church provided its second notice of default pursuant to paragraph 10.2.2 of the Contract. Again, we have still not received an accounting or assurance that subcontractors, laborers, and materialmen have and will be paid for sums that are properly owed by Templebloc. Nor have we received a schedule or plan for completing the project or assurances that the project will be completed.

Notwithstanding the statements made at the meeting on January 10, 2007, there are no outstanding requests for change orders or unpaid pay requests. Although we requested that you provide us with a list of the purported outstanding change order requests, we have still not received any. We have also not been provided with a list of any unpaid pay requests. With reference to efforts to reconcile payments, schedule of values submitted by Templebloc with its pay requests, and work performed, the Church relied upon Templebloc's assurances that the pay requests and schedules of values were true and correct. If the representations in the pay requests and accompanying schedules were not true and correct, please advise us in writing immediately and specifically identify each error. In addition to the items already listed, submitting false pay requests would also constitute a breach of the Contract.

In sum, Templebloc remains in default of the Contract between Templebloc and the Church. Accordingly, pursuant to Section 10.2.2 of the Contract, the Church hereby gives notice of the termination of the Contract.

By copy of this letter to the Surety, pursuant to Article 3 of the Bond, the Church hereby declares a Contractor Default. Pursuant to Section 3.3, the Church agrees that it will pay the Balance of the Contract Price to the Surety or to a contractor selected to perform the Contract. Accordingly, demand is made that the Surety take action as set forth in Section 4 of the Bond. The Church also requests that the Surety advise how much time it deems to be "reasonable promptness" for it to act pursuant to Section 5 of the Bond.

04-12-07   12:09   From-Rieves,Reubens, Mayton          +8707356825          T-277   P.053/067   F-487

Feb.16. 2007  2:17PM                                          No 1779   P. 4/6

Page 3 of 3
February 9, 2007

Nothing in this letter should be construed as a waiver of any right the Church may have
under either the Contract or the Bond. The Church specifically reserves all rights it may
have under the Contract and the Bond. It remains in everyone's interest for the project to
be finished as soon as possible.

Very truly yours,

Rev. Frederick S. Anthony

cc:

Gwen Moyo
Attorney in Fact
261 Oakmont Drive
New Orleans, LA 70128

Craig Greene
Director of Construction
Claims Division
AA Risk Management
10043 Jefferson Highway
Baton Rouge, LA 08090

# Rieves, Rubens & Mayton
LAWYERS

West Memphis Office
104 East Broadway
P.O. Box 1150
West Memphis, AR 72301
Telephone 870-715-1410
Telecopier 870-735-4638

Elton A. Rieves, IV
Kent J. Rubens
Lawrence W. Jackson
Brian F. Walthart**

Of Counsel
A.C. Haeper**

Elton A. Rieves, Jr.
(1904-1964)
Edward J. Reubens
(1915-1977)
Ralph W. Simms
(1915-1968)
Elton A. Rieves, IV
(1957-2003)

February 12, 2007

Little Rock Office
Suite 200, The Lyon Building
401 West Capitol Avenue
Little Rock, AR 72201
Telephone 501-176-0504
Telecopier 501-375-1444

Michael R. Mayton*
Eric Newkirk
David C. Jones
Michael C. Siebs

Also Licensed in Texas*
Licensed Also In Tennessee**

Mr. Craig Greene
Director of Construction
Claims Division AA Risk Management
10043 Jefferson Highway
Baton Rouge, LA 08090

Ms. Gwen Moyo
Attorney in Fact
First Nation Insurance Group
261 Oakmont Drive
New Orleans, LA 70128

Mr. Kenneth Blockett, President and CEO
Templebloc, Inc.
P.O. Box 1598
Cleveland, MS 38732

Re:    Old St. Paul Missionary Baptist Church

Dear Gentlemen and Ms. Moyo:

Old St. Paul Missionary Baptist Church ("Church") has asked me to review the proposed assignment agreement for the remaining construction proceeds on the construction of the Church's worship center and which was the subject of a contract between Templebloc and the Church dated February 17, 2006. I have numerous concerns regarding the proposed assignment. In addition, in reviewing correspondence to the church, I am seeing few, if any, references to First Nation Insurance Group. As you know, Ms. Moyo executed the surety bond on this project as the "Attorney-In-Fact" for First Nation Insurance Group, and that bond requires any payment of any remaining proceeds to be made to the surety company in the event of a contract or default. The surety is First Nation Insurance Group, not AA Communications, Inc., or AA Risk Management. Please advise us of the status of Ms. Moyo's and the AA entities' authority to act on behalf of First Nation Insurance Group. Please provide written confirmation of, and any



PLAINTIFF'S EXHIBIT
N

Rieves, Rubens & Mayton

February 12, 2007
Page 2

documents that you have evidencing, the authority of AA or Ms. Moyo to act on behalf of First
Nation Insurance Group.

With respect to the assignment agreement itself, I have at least the following concerns:

- The date of the construction contract should be February 17, 2006;

- I have no idea what the terms of the General Indemnity
  Agreement are and would request that you provide a copy
  of the General Indemnity Agreement between Templebloc
  and the surety;

- The agreement should be between the surety and the Church, not
  AA Communications, Inc. First Nation Insurance Group should be
  substituted throughout the assignment agreement; and the second
  preliminary paragraph should be deleted.

- Again, in paragraph 1 the proposed agreement should provide that
  the assignment of the construction proceeds is to First Nation
  Insurance Group, not AA Communications, Inc.;

- In paragraph 2, the total contract amount should read "46% of
  $2,690,658.00", and the second sentence should read, "The
  remaining balance of the contract price is $174,921.65;"

- In paragraph 3, the last two sentences are unacceptable and should
  be deleted;

- In paragraph 4, there is reference to an "Appendix A" but there is
  no "Appendix A" attached for review

- There are several problems with paragraph 5, which include
  objections to the use of the term "negotiable value" and the
  "regardless of alleged defenses" language. In addition, I have no
  idea what is meant by the term "conditional lien release." Also,

Rieves, Rubens & Mayton

February 12, 2007
Page 3

> given the contractor's prior representations in his pay request,
> please advise me if the surety disputes the accuracy of the
> contractor's representations regarding the progress of the work in
> those pay requests. Until then, general references to additional
> progress payments needing to be made are objectionable. There
> may be room in the remaining contract price for some progress
> payments to be made, but the bulk of what remains, according to
> my understanding, is retainage which is payable under the "final
> payment" provisions of the construction contract;

- An additional paragraph should be added providing the following
  language:

  > For all payments made under this assignment
  > agreement, First Nation Insurance Group agrees to
  > waive all objections to said payments and any
  > conflicting terms regarding said payments that may
  > be contained in the performance bond.

- Paragraph 6 should be replaced with a new paragraph 7 which reads:

  > Nothing herein shall be construed as a waiver of any right, claim,
  > or defense that the owner may have pursuant to the construction
  > contract or any payment or performance bond.

Again, the church has declared a contractor default pursuant to both the construction
contract and the bond. The church stands ready to fulfill its obligations under the terms of the
performance bond, which the church acknowledges will require it to make any further payments
under the construction contract to the surety. Again, the surety identified in the performance
bond is First Nation Insurance Group, not AA. I note that to date, the church has not received
any response to its request for identification of any unresolved change order request, nor has the
church refused to pay the contractor, relying upon the contractor's representations about the
progress of the work. Notwithstanding the Church's full performance of its obligations under the
construction contract, Templebloc left the job site in early December, returned briefly after the
January 10 meeting, left the job site again on or about January 29, 2007, and as of February 9,

# Rieves, Rubens & Mayton

February 12, 2007
Page 4

2007, had abandoned the job site for a third time. I also note that at no time since early December has Templebloc provided any subcontractors on the job site (even when a few of its employees did return for a few days in January). In addition, the Church continues to receive letters and notices from sub-contractors that have not been paid by Templebloc. Also, notwithstanding the Church's repeated requests for an updated construction schedule, neither Templebloc nor AA have been able to provide one. Again, the Church requests that the surety advise the church of how much time it believes would be reasonable for it to take one of the actions in paragraph 4 of the bond. Again, demand is made that the contractor resolve the payment and lien issues being raised by the sub-contractors and account for the payments it has already made.

With respect to the assignment agreement, I believe the first issue is to answer the questions regarding the authority of AA to act on behalf of First Nation Insurance Group. After that question is resolved, we can address the other objections to the proposed assignment agreement and hopefully resolve them, and proceed under the terms of the bond.

Thank you. Please give me a call if you have any questions.

Very truly yours,

RIEVES, RUBENS & MAYTON

Lawrence W. Jackson

LWJ/hm

Feb-12- 2007 12:30PM                                                      No.5737   P. 1 6



# Templebloc, Inc.

### General Contractors • Construction Manager

Email. blockettea@hotmail.com

February 12, 2007

Rev. Frederick S. Anthony, Pastor
Old St. Paul MB Church
504 S. 8th Street
PO Box 1116
West Memphis, AR 72303

RE: Notice of Termination of Contract
Declaration of Contractor Default

*(sent via email)*

Dear Rev. Anthony:

We are in receipt of your letter dated February 9, 2007 as it relates to the above referenced project.

Our position remains the same as it relates to Templebloc, Inc. having a contract with John Widener d/b/a Boaz Home Improvement Company, LLC and Albert Alexander d/b/a A & A Stucco Company. We will continue do as required per the Arkansas Code Rules and Regulations as it relates to companies doing business in the state of Arkansas. We will be filing a claim with the State Board of Arkansas Contractors disputing this Lien Notice.

We are requesting that you reconsider your decision to terminate our contract. We submitted to our subcontractor's **NOTICE to COMPLY** and are yet to receive a response. Within the body of the notice to comply it required them to submit an outline of the completed scope of work to date as well as their projected time to complete their scope of work per their original contract.

Prior to approval of any invoice for payment, there were meetings held with all appropriate parties prior to the invoice approvals which included the Old St. Paul MB Church Executive Construction Committee who was well aware of schedule of value changes in order to cover additional work that was performed on site. Please reference article 8.1.

An accounting of the project you have by way of all approved and signed Invoice for Payments submitted by Templebloc, Inc. to you (Church), Samuel Turner, III (Architect) as well as the Bank of Bartlett (Inspector) for approval. All parties were on one accord for payment of each application/invoice for payment. Therefore there were no false pay requests submitted. Had there been we would have made all appropriate and correct (true) pay request corrections and resubmitted for approval accordingly.

As outlined in our Plan of Action we divided up the scope of work for Exterior and Interior Finishes. Our initial phase was to complete the exterior scope of work. The reason for workers not being at the site was due to materials being order, adverse weather conditions and re-mobilizing crews to the job site.
Page 2 cont'd



PLAINTIFF'S
EXHIBIT

P. O. Box 1598• Cleveland, MS 38732 • (662) 843-9559 - (662) 843-6695 Fax

04-12-07    12:10    From-Rieves,Reubens, Mayton        +8707356825        T-277   P.059/067   F-487

Feb.11. 2007 12:38PM                                                    No.3727   P. 3/3

Rev. Frederick S. Anthony, Pastor
Response to Notice of Termination
February 12, 2007

Materials to complete the exterior were ordered and delivered to the job site as well as coordinating necessary trades to the job site.

All requested claims for payments from subcontractors and/or suppliers are being assessed and reviewed by the Surety Company

We will provide a schedule of completion which is reflective in the Plan of Action and will provide assurance that we will complete our contract agreement. All change orders have been submitted to the surety company and we are awaiting their review and submitting the requests to you. Upon approval of the Plan of Action from you (Church) and AA Communications (Surety) we have stated that it will take on or before 120 days to complete the project.

In addition we are requesting that Section 3.9 Professional Design Services still be enforced on this project.

However should you not reconsider and we are unable to come up with an amicable solution to complete your project, we are enforcing Section(s) 10.4 Obligations arising before termination.

And, if we are not able to work out our differences as per Sections 11.1, 11.2 and 11.3, and if there is no reconsideration of your decision, may this letter serve as a written notice for Formal Mediation/Arbitration as stated in Section 11.4 of our construction agreement. Templebloc, Inc. shall enforce Section 11.6 as deemed necessary to protect our enrichment(s) into the project.

Until then, I remain.

Sincerely,
TEMPLEBLOC, INC.

By: Kenneth Blockett
Its: President/CEO

C: Gwen Moyo
    Dan Esparza
    Craig Greene
    Clifton Lipman

# Templebloc, Inc.

 **Templebloc, Inc.**

### General Contractors • Construction Manager

Email: blockented@hotmail.com

February 13, 2007

Rev. Frederick S. Anthony, Pastor
Old St. Paul MB Church
504 S. 8ᵗʰ Street
PO Box 1116
West Memphis, AR 72303

### (CLARIFICATION and CORRECTION)

RE: Notice of Termination of Contract
    Declaration of Contractor Default

*(sent via email)*

Dear Rev. Anthony:

May this letter serve as clarification of understanding and correction on the letter emailed to you on February 12, 2007 as it relates to AA Communications. As follows:

As previously written: DELETE: *"Upon approval of the Plan of Action from you (Church) and AA Communications (Surety) we have stated that it will take on or before 120 days to complete the project".*

Should Read: INSERT: *"Upon approval of the Plan of Action from you (Church) and AA Communications (Risk Manager/Third Party Administrator) we have stated that it will take on or before 120 days to complete the project".*

AA Communications is and has always been the Risk Manager/Third Party Administrator and is not the Surety as stated in my previous letter. Insert this amendment of understanding as an attachment to the letter emailed you on February 12, 2007.

We apologize for any misunderstanding or misinterpretation this may have caused. Should you require any additional information, please notify the undersigned.

Until then, I remain.

Sincerely,
TEMPLEBLOC, INC.

By: Kenneth Blocker
Its: President/CEO

C. Gwen Mayo
    Dan Esparza
    Craig Greene
    Clifton Lipman



PLAINTIFF'S EXHIBIT
P

P.O. Box 1598 • Cleveland, MS 38732 • (662) 843-9559 • (662) 843-6695 Fax

# Rieves, Rubens & Mayton
## LAWYERS

West Memphis Office
109 East Broadway
P.O. Box 1359
West Memphis, AR 72301
Telephone 870.735.1420
Telecopier 870.735.6078

Elton A. Rieves, Jr
(1909-1984)
Edward J. Rubens
(1911-1977)
Ralph W. Sloan
(1915-1990)
Elton A. Rieves, IV
(1957-2005)

Little Rock Office
Suite 200, The Lyon Building
401 West Capitol Avenue
Little Rock, AR 72301
Telephone 501 7760504
Telecopier 501-375-1444

Michael R. Mayton*
Eric Newkirk
David C. James
Michael G. Smith

Elton A. Rieves III
Kent J. Rubens
Lawrence W. Jackson
Brian E. Wakhart**

Of Counsel:
A.C. Hooper**

*Also Licensed In Texas*
*Licensed Also In Tennessee**

February 19, 2007

## Certified Mail, Return Receipt Requested
# 7005 1820 0006 4807 5641
VIA FACSIMILE 225.763.9884
Ms. Gwen Moyo
Attorney in Fact
First Nation Insurance Group
261 Oak Mont Drive
New Orleans, LA 70128

Re:    Written notice of demand that surety performance obligations under bond

Dear Ms. Moyo:

On or about February 9, 2007, Old St. Paul Missionary Baptist Church ("Church") notified First Nation Insurance Group ("Surety") that the Church was declaring a Contractor Default pursuant to Section 3.3 of the Bond. The Church has also previously copied the Surety on its correspondence to Templebloc, Inc. ("Templebloc"). Notwithstanding the Church's requests, Templebloc has left the job site on at least three occasions, no significant work has been performed by Templebloc since early December, Templebloc has failed to account for payments it has received or otherwise explain why multiple subcontractors apparently have not been paid, failed to supply a construction schedule, failed to identify any default or defect in the Church's performance of its obligations under the construction contract, and otherwise failed to perform its obligations under the construction contract. As you recall, the Church notified you in December that it was considering declaring a contractor default and a meeting was held on January 10, 2007. Notwithstanding the meeting and additional notices pursuant to the construction contract, the contractor still failed to cure his default.

Since the February 9, 2007, letter, the Church has failed to receive any information from the Surety indicating what the Surety intends to do to ensure performance of the contract. To the contrary, instead of trying to take steps to finish the project as soon as possible (which would seem to be in the interest of all concerned, including the Surety), the Church has only received correspondence misidentifying AA Communications as the "Surety" and request that the Church assign the remaining contract balance to AA Communications, which I would point out contradicts the plain language of the surety bond. Again, the Church stands ready to perform its



PLAINTIFF'S
EXHIBIT

# Rieves, Rubens & Mayton

obligations under the contract and bond, including paying the remaining contract balance to the *Surety*.

Please consider this letter the Church's demand pursuant to paragraph 5 of the bond, that the Surety proceed as provided in paragraph 4 of the bond. Please note that paragraph 5 of the bond requires that the Surety proceed within 15 days of the receipt of this letter. Accordingly, if the surety does not proceed as provided in paragraph four within 15 days, the Church will take whatever steps are necessary to enforce the provisions of the performance bond.

In addition, the Church is again requesting that you provide evidence of your authority to act on behalf of First Nation Insurance Group or AA Communications (or any other AA company) to act on behalf of First Nation Insurance Group. I note that any false representations to the Church or to the bank regarding authority to act on behalf of First Nation Insurance Group could subject the persons or entities involved in making those false representations to criminal liability. I am also requesting that you provide evidence of your and First Nation Insurance Group's authority to sell Surety bonds or otherwise transact business in the State of Arkansas.

Thank you. Please give me a call if you have any questions.

Very truly yours,

Lawrence W. Jackson
LWJ/fms
cc:  **Certified Mail, Return Receipt Requested**
 **# 7005 1820 0006 4807 5658**
 VIA FACSIMILE 662.843.6695
 Mr. Kenneth Blockett, President & CEO
 Templebloc, Inc.,
 P.O. Box 1598
 Cleveland, MS 38732

 **Certified Mail, Return Receipt Requested**
 **#7005 1820 0006 4807 5665**
 VIA FACSIMILE 225.295.9983
 Mr. Craig Greene
 Director of Construction
 AA Risk Management
 10043 Jefferson Hwy
 Baton Rouge, LA 08090

# Rieves, Rubens & Mayton
LAWYERS

West Memphis Office
104 East Broadway
P.O. Box 1599
West Memphis, AR 72303
Telephone 870-735-1620
Telecopier 870-735-1676

Elton A. Rieves, Jr.
(1909-1984)
Edward J. Rubens
(1911-1977)
Ralph W. Shaw
(1915-1998)
Elton A. Rieves, IV
(1997-2005)

Little Rock Office
Suite 200, The Lawn Building
401 West Capitol Avenue
Little Rock, AR 72201
Telephone 501-960-3504
Telecopier 501-175-1444

Elton A. Rieves III
Kent J. Rubens
Lawrence W. Jackson
Brian P. Wildhart*

Michael R. Mayton*
Eric Newkirk
David C. Jones
Michael C. Smiles

J.W. Samuel
A.C. Hooper**

Also Licensed in Texas*
Licensed Also In Tennessee**

February 20, 2007

## VIA FACSIMILE AND FIRST CLASS MAIL

Mr. Kenneth Blockett, President & CEO
Templebloc, Inc.,
P.O. Box 1598
Cleveland, MS 38732

> Re:    February 12, 2007 response to notice of termination and declaration of
>        contractor default

Dear Mr. Blockett:

In response to your letter of February 12, 2007, Templebloc has still failed to respond to the
Church's previous questions, concerns, and notices of default in Templebloc's performance. I
note that no significant work has been performed by Templebloc since December 9, 2006,
notwithstanding the fact that the original substantial completion date was September 30, 2006,
and the final completion date was October 30, 2006. In response to the Church's request for any
outstanding change order request or unpaid pay request, the Church has received nothing. In
response to the Church's request for a construction *schedule* or anything showing the critical path
for work remaining to be completed, the Church has received only the "Notice to Comply,"
which is not a construction schedule and has still failed to effect any work. In response to the
Church's request that Templebloc account for the payments already made by the Church (given
that the work may not be as far along as Templebloc represented it to be, yet several
subcontractors have complained about not having been paid by Templebloc), the Church
received nothing. Even after the meeting of January 10, 2007, no subcontractors have been on
the project for a single day, notwithstanding the meeting and subsequent notices of default issued
to Templebloc. There are also numerous other defaults that are the subject of prior letters. In
sum, Templebloc is in breach of the construction contract, has not cured its breaches, and the
Church has exercised its right to terminate the contract and demand that the Surety perform its
obligations under the bond.

# Rieves, Rubens & Mayton

Related to the foregoing list of defaults by Templebloc, the Church has already paid $23,000 for flooring, which has not yet been delivered to the job site. The Church, in addition to its previous demands, requests that you also account for either the $23,000 or the flooring.

Regarding your reference to Section 3.9 of the contract, the contract is for a design-build project and the agreement was drafted entirely by Templebloc. Article 1 of the contract provides that the project is a "New structure to be design-build Pre-engineered Metal Frame building..." Templebloc also verbally represented that the project would be Design/Build and that it could construct the building according to the plans at the time it executed the contract in February 2006. To date, at no time have the Surety, contractor, or architect, notified the Church that there is any defect in the architect's designs, advised the Church of any outstanding Requests for Information that were submitted to the architect, or identified any change order requests caused by any design defect.

With reference to Section 10.4, as you know, there were no change order requests outstanding when Templebloc left the job in December 2006 and none have been received since. In addition, there have been no pay requests submitted to the Church that have remained unpaid or unresolved. We do have concerns about the validity of the change orders that you claim to have given to the Surety at this late date and which were not provided to the Church. Ms. Moyo's complaint at the January 10 meeting was that the Church had apparently, according to her, overpaid the contractor. The bond provides that the Surety waives notice of any change orders, so there should be no change orders submitted to the Surety instead of the Church. Your letter also refers to AA Communications as the Surety. As noted in my other letters, the Surety is First Nation Insurance Group and the Church demands evidence of AA Communication's authority to act on behalf of the First Nation Insurance Group.

Also with respect to your reference to Section 10.4, obligations arising before termination, the Church has fully complied with its obligations under the construction contract. As previously noted, Templebloc left the job site in early December and has performed no further work. At the time Templebloc first left the job site, there were no outstanding change order requests and every submitted pay request had been paid. The Church has received no notice that it is in breach of any provision of the construction contract.

With respect to your reference to Section 11 of the contract, Dispute Resolution, the Church has attempted repeatedly to resolve the dispute in a peaceable and amicable manner. I note that Section 11.1, as cited in your letter, provides that there should be no stoppage of work by Templebloc. The Church has also tried to resolve this matter by private discussion, informally and at a meeting - most notably on January 10, 2007. With respect to the informal mediation and arbitration provisions, the Church is not opposed to informal mediation. I also note that arbitration proceeding would be governed by the Rules of Procedure for Christian Conciliation. If Templebloc wishes to arbitrate this dispute, pursuant to Rule 5, Templebloc should contact the

# Rieves, Rubens & Mayton

administrator as defined in those rules. The existence of the arbitration proceedings would not stay or excuse the Surety's performance of its obligations under the bond, nor does the bond require the Church to arbitrate with the Surety if the Surety breaches the bond.

I strongly suspect that, given your recent indictment in the Northern District of Mississippi and inability to account for the Church's payments to date, that any mediation and arbitration proceedings between Templebloc and the Church would be a needless expense and waste of time. Accordingly, the Church is also demanding that the Surety notify the Church of which action it intends to take under Section 4 of the bond and attempt to finish the project immediately, whether it uses Templebloc or any other Contractor, subject to the Church's approval. I also note that the Bond provides that the Surety is liable for the additional legal, design, professional and delay costs. Bond, Section 6.2.

Thank you. Please give me a call if you have any questions.

Very truly yours,

Lawrence W. Jackson
LWJ/fms
cc:      Gwen Moyo
         Attorney in Fact
         First Nation Insurance Group
         361 Oak Mont Drive
         New Orleans, LA 70128

         Mr. Craig Greene
         Director of Construction
         AA Risk Management
         10043 Jefferson Hwy
         Baton Rouge, LA 08090

Rieves, Rubens & Mayton

LAWYERS
104 East Broadway
P.O. Box 1159
West Memphis, AR 72301

Mr. Craig Greene
Director of Construction
AA Risk Management
10643 Jefferson Hwy

NIXIE      708   1   DE  02/24/07

       RETURN TO  SENDER
NOT DELIVERABLE AS ADDRESSED
       UNABLE TO  FORWARD

BC: 72303135655    AC647·14923·20·50

# WOMACK, LANDIS, PHELPS, McNEILL & McDANIEL

A Professional Association
Attorneys at Law
Century Center
301 West Washington
P. O. Box 3077
Jonesboro, Arkansas 72403

Tom D. Womack
David Landis
John V. Phelps
Paul McNeill
Lucinda McDaniel
Richard Lusby
Jeffrey W. Puryear
Mark Mayfield
J. Regan McNeill
Dustin H. Jones
J. Nicholas Livers
Kacey E. Coleman
Jarod S. Woodard
Sonna Y. Green
I. David Dunn
Jeffrey Scriber

Chuck Ombwend
Of Counsel

Telephone (870) 932-0900
Facsimile (870) 915-2555

djones@wlpmm-firm.com

March 7, 2007

*Sent to L.R.*
*tell them w/m*

VIA FACSIMILE (501) 375-3444

Lawrence W. Jackson
REIVES, RUBENS & MAYTON
Suite 200, Lyon Building
401 West Capitol Avenue
Little Rock, AR. 72201

Re:   St. Paul Missionary Baptist Church

Dear Mr. Jackson:

We will be representing First Nation Insurance Company and AA Communications.

We have reviewed your letter of February 19, 2007, to Gwen Mayo. We are in the process of preparing a more formal, accurate, and precise response to your letter. At this point, I can inform you that it will be my client's position that the Church substantially overpaid the contractor for the work performed and committed several other violations which negate or reduce the coverage of the bond.

We look forward to working with you in this matter.

Sincerely,

WOMACK, LANDIS, PHELPS
McNEILL & McDANIEL

Dustin H. Jones

Dustin H. Jones

DJ:rdh



## IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
## CIVIL DIVISION

OLD ST. PAUL MISSIONARY BAPTIST CHURCH                    PLAINTIFF

V.                                                          NO. CV 2007-126 (PH)

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10                                         DEFENDANTS

### PLAINTIFF'S FIRST COMBINED DISCOVERY REQUESTS TO DEFENDANT FIRST NATION INSURANCE GROUP

Comes plaintiff Old St. Paul Missionary Baptist Church ("Church"), by and through its

lawyers, Rieves, Rubens & Mayton, and pursuant to Ark. R. Civ. P. 26, 33, and 34 propounds the

following Interrogatories and Requests for Production to **DEFENDANT FIRST NATION**

### INSURANCE GROUP:

**INTERROGATORY NO. 1:** Please state whether you contend any party defendant is

misjoined or misidentified. If your answer is yes, please identify each such misjoined or

misidentified party, provide its correct name, address, phone number, and agent for service,

explain fully and in detail the bases for your contention that such is misjoined or misidentified,

and state whether you are willing or able to accept service of an amended summons and

complaint reflecting the party's correct identification.

### RESPONSE:

**INTERROGATORY NO. 2:** Please list and identify each and every State in the United

States in which you are authorized to offer, sell, and issue insurance contracts or surety bonds.

### RESPONSE:

1                    Z:\Old St Paul - Templebloc\FNIG004 discov FNIG.doc

**INTERROGATORY NO. 3:** Please state whether you have a certificate of authority or other license to offer, sell, and issue insurance contracts or surety bonds in the State of Arkansas.

**RESPONSE:**  NO

**REQUEST FOR PRODUCTION NO. 1:** If your answer to the preceding interrogatory is anything other than an unqualified "no," please produce your certificate of authority and all other documents that you believe evidences your authority to offer, sell, and issue insurance contracts or surety bonds in the State of Arkansas.

**RESPONSE:**  NO

**INTERROGATORY NO. 4:** Are the performance and payment bonds attached as Exhibits A and B to plaintiff's complaint are valid and enforceable? If your answer is anything other than an unqualified "yes," please state every reason for, and describe in plenary detail the factual basis for, your contention that the bonds are not, or may not be, valid and enforceable.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 5:** Please state whether venue is proper in the Crittenden County Circuit Court. If your answer is anything other than an unqualified "yes," please describe in detail the factual basis for your response.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to

2

your response.

**RESPONSE:**

**INTERROGATORY NO. 6:** Please state whether the Crittenden County Circuit Court has jurisdiction of the parties and subject matter of plaintiff's complaint. If your answer is anything other than an unqualified "yes," please describe in detail the factual basis for your response.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:** Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 7:** Please state whether Gwen Moyo was authorized as your attorney in fact to execute on your behalf the performance and payment bonds attached as Exhibits A and B to plaintiff's complaint. If your answer is anything other than an unqualified "yes," please describe in detail the factual basis for your response.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:** Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 8:** Please state whether you believe that plaintiff fully performed its obligations under its February 16, 2007, Construction Contract (as identified in the bonds) with Templebloc, Inc. If your answer is anything other than an unqualified "yes," please

3                          Z:\Old St Paul - Templebloc\FNIG004 discov FNIG.doc

**REQUEST FOR PRODUCTION NO. 8:**  Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 11:**  Please state whether Templebloc, Inc. or any of its officers, directors, employees, or shareholders have breached any indemnity agreement or any other agreement with you.  If your answer is anything other than an unqualified "yes," please specifically identify each and every failure of Templebloc, Inc. or its officers, directors, employees, or shareholders to comply with any term of either of the bonds, and describe in detail the factual basis for each such purported failure.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**  Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 12:**  Please identify by location, date of construction contract, date of bond, and name, address, and phone number of the owner, each and every surety bond issued by you since January 1, 1997, for any construction project being performed by any of the following persons or entities:

a) Templebloc, Inc. or any other company that you believe to be a predecessor of or related to Templebloc, Inc.;

b) any other company in which you believe Kenneth Blockett may have served as an officer, employee, or director, or may have been an owner.

5                    Z:\Old St Paul - Templebloc\PNIG004 discov PNIG.doc

**REQUEST FOR PRODUCTION NO. 8:** Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 11:** Please state whether Templebloc, Inc. or any of its officers, directors, employees, or shareholders have breached any indemnity agreement or any other agreement with you. If your answer is anything other than an unqualified "yes," please specifically identify each and every failure of Templebloc, Inc. or its officers, directors, employees, or shareholders to comply with any term of either of the bonds, and describe in detail the factual basis for each such purported failure.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:** Please produce each and every document that you believe supports your response to the preceding interrogatory or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 12:** Please identify by location, date of construction contract, date of bond, and name, address, and phone number of the owner, each and every surety bond issued by you since January 1, 1997, for any construction project being performed by any of the following persons or entities:

a) Templebloc, Inc. or any other company that you believe to be a predecessor of or related to Templebloc, Inc.;

b) any other company in which you believe Kenneth Blockett may have served as an officer, employee, or director, or may have been an owner.

5       Z:\Old St Paul - Templebloc\FNIG004 discov FNIG.doc

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** Please produce a copy of each and every performance bond, payment bond, or other surety bond that you have issued for any construction project involving Templebloc, Inc. as a contractor.

**RESPONSE:**

**INTERROGATORY NO. 13:** Please identify and describe in detail the terms of each and every contract or agreement, including any indemnity agreement or guaranty agreement, between you and any of the following persons and entities:

a) Templebloc, Inc.

b) Kenneth Blockett

c) Gwen Moyo

d) AA Risk Management, Inc.

e) AA Communications, Inc.

f) Craig Greene

g) Dan Esparza

h) Erik Esparza

i) David Friedman

j) any affiliated company or business of Templebloc, Inc., AA Risk Management, Inc., or AA Communications, Inc., including any parent company, subsidiary, or other related entity;

k) any officer, director, or shareholder of Templebloc, Inc., AA Risk Management, Inc., AA Communications, Inc., or other affiliated company identified in response to the preceding subpart.

**RESPONSE:**

6

**REQUEST FOR PRODUCTION NO. 11:** Please produce each and every contract or agreement identified or referenced in your response to the preceding interrogatory.

**RESPONSE:**

**INTERROGATORY NO. 14:** State the names, occupations, addresses, and telephone numbers of all persons whom you believe to have knowledge or information relevant to any of the allegations in plaintiff's complaint, your denials of any of the allegations, or any defense asserted in your answer, including any objections to venue, jurisdiction, and service of process.

**RESPONSE:**

**INTERROGATORY NO. 15:** Summarize briefly the facts related to this lawsuit that you believe are known to each person listed in your answer to the preceding interrogatory, and state whether you intend to call them as witnesses at trial. Also, please identify (by name, address, phone number, and occupation) all other lay witnesses you will call at trial that are not listed in response to the preceding interrogatory.

**RESPONSE:**

**INTERROGATORY NO. 16:** State the name, address, occupation and qualification of each person whom you intend to call as an expert witness at the trial of this case.

**RESPONSE:**

**INTERROGATORY NO. 17:** With respect to each person identified as an expert witness, state the subject matter on which such person is expected to testify, the substance of the facts and opinions to which such person is expected to testify, and a summary of the grounds for each opinion.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** Please produce all reports prepared by any

sheets, income statements, and cash flow statements for each quarter since January 1, 2002, and each insurance policy identified in response to the preceding interrogatory.

**RESPONSE:**

**INTERROGATORY NO. 20:** Please state whether you tried in good faith to investigate plaintiff's claims under the bonds attached as Exhibits A and B to plaintiff's complaint If your answer is anything other than an unqualified "no," please describe in detail the nature and extent of the investigation and all actions taken during the course of the investigation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:** Please produce each and every document that you believe evidences your efforts to conduct a good faith investigation, supports your response to the preceding interrogatory, or is otherwise relevant to your response.

**RESPONSE:**

**INTERROGATORY NO. 21:** Please identify all records or documentation which support, tend to support, or which in any way relate to each and every claim or defense in this lawsuit. If any of the documents or documentation identified have been made by or are in the possession of another party, identify that person by name, current address, telephone number, and provide a general description of the documents or documentation in that person's possession.

**RESPONSE:**

**INTERROGATORY NO. 22:** For all records, documents, data compilations, or things responsive to any request for production or requested to be identified in response to any interrogatory, did any such records, documents, data compilations, or things exist (in any format, including electronic) which have been destroyed or lost, or are otherwise now unavailable? If so, please describe each such document, record, or data compilation in detail, including the date it

9

was created, a detailed description of its substance, the date it was lost or destroyed, and a detailed explanation of why and how it was destroyed.

**RESPONSE:**

**INTERROGATORY NO. 23:** Describe, in sufficient detail for plaintiff's attorneys and the Court to evaluate any claim of privilege, each document in defendant's custody or control which has not been or is not produced in response to any discovery request (including those previously made) because defendant claims it is privileged or subject to the attorney work product protection.

**RESPONSE:**

*Propounded this $\underline{15^{th}}$ day of March 2007, and served with the Summons and Complaint in this matter.*

RESPECTFULLY SUBMITTED,
RIEVES, RUBENS & MAYTON

Lawrence W. Jackson (92194)
Lawyers for Plaintiff
P.O. Box 1359
West Memphis, AR 72303
(870) 735-3420

**CERTIFICATE OF SERVICE**

The undersigned certifies that he is causing a copy of the foregoing document to be served on each of the named defendants with the summons and complaint.

Lawrence W. Jackson

15 March 2007
Date

10                    Z:\Old St Paul - Templebloc\FNIG004 discov FNIG.doc

## IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
## CIVIL DIVISION

OLD ST. PAUL MISSIONARY BAPTIST CHURCH                    PLAINTIFF

V.                                                    NO. CV 2007-$\lfloor 2 \rfloor$

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10                                      DEFENDANTS

## SUMMONS

Plaintiff's Lawyer:          Lawrence W. Jackson (92194)
                             Lawyers for Plaintiff
                             P.O. Box 1359
                             West Memphis, AR 72303
                             (870) 735-3420

THE STATE OF ARKANSAS TO DEFENDANT: **First Nation Insurance Group**
                                    c/o Julie Benafield Bowman
                                    Arkansas State Insurance Commissioner
                                    1200 West Third Street
                                    Little Rock, AR 72201

## NOTICE

1. You are hereby notified that a lawsuit has been filed against you. The relief sought is

stated in the attached Complaint.

2. The attached Complaint will be considered admitted by you and a judgment may be

entered against you for the relief sought in the complaint unless you file a pleading and thereafter

appear and present your defense. Your pleading or answer must meet the following

requirements:

1

(a) It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

(b) It must be filed in the Court Clerk's office within thirty (30) days from the day you were served with this summons.

3. If you desire to be represented by an attorney, you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. Additional Notices: : Summons, Complaint, Plaintiff's First Combined Discovery Requests to Defendant First Nation Insurance Group

5. WITNESS, my hand and the seal of the court this $\underline{15th}$ day of March, 2007.

DONNA PALMER
CIRCUIT COURT CLERK

BY _____
DEPUTY CLERK

Clerk's address:
Crittenden County Courthouse
100 Court Street
Marion, AR 72364

2

## IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
## CIVIL DIVISION

OLD ST. PAUL MISSIONARY BAPTIST CHURCH       PLAINTIFF

V.                         NO. CV 2007- 126

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10                     DEFENDANTS

### SUMMONS

Plaintiff's Lawyer:      Lawrence W. Jackson (92194)
                     Lawyers for Plaintiff
                     P.O. Box 1359
                     West Memphis, AR 72303
                     (870) 735-3420

THE STATE OF ARKANSAS TO DEFENDANT: **AA Communications, Inc.**
                                     c/o Charlie Daniels
                                     Arkansas Secretary of State
                                     State Capitol Building, Room 256
                                     Little Rock, AR 72201

### NOTICE

1. You are hereby notified that a lawsuit has been filed against you. The relief sought is
stated in the attached Complaint.

2. The attached Complaint will be considered admitted by you and a judgment may be
entered against you for the relief sought in the complaint unless you file a pleading and thereafter
appear and present your defense. Your pleading or answer must meet the following
requirements:

1

(a) It must be in writing, and otherwise comply with the Arkansas Rules of Civil

Procedure.

(b) It must be filed in the Court Clerk's office within thirty (30) days from the day you

were served with this summons.

3. If you desire to be represented by an attorney, you should immediately contact your

attorney so that an answer can be filed for you within the time allowed.

4. Additional Notices: : Summons, Complaint, Plaintiff's First Combined Discovery

Requests to Defendant First Nation Insurance Group

5. WITNESS, my hand and the seal of the court this _____ day of March, 2007.

DONNA PALMER
CIRCUIT COURT CLERK

BY _____
DEPUTY CLERK

Clerk's address:
Crittenden County Courthouse
100 Court Street
Marion, AR 72364

2

## IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
## CIVIL DIVISION

OLD ST. PAUL MISSIONARY BAPTIST CHURCH                    PLAINTIFF

V.                                                  NO. CV 2007-$\underline{126}$

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10                                      DEFENDANTS

### SUMMONS

Plaintiffs Lawyer:        Lawrence W. Jackson (92194)
                          Lawyers for Plaintiff
                          P.O. Box 1359
                          West Memphis, AR 72303
                          (870) 735-3420

THE STATE OF ARKANSAS TO DEFENDANT: **AA Risk Management, Inc.**
                          c/o Charlie Daniels
                          Arkansas Secretary of State
                          State Capitol Building, Room 256
                          Little Rock, AR 72201

### NOTICE

1. You are hereby notified that a lawsuit has been filed against you. The relief sought is

stated in the attached Complaint.

2. The attached Complaint will be considered admitted by you and a judgment may be

entered against you for the relief sought in the complaint unless you file a pleading and thereafter

appear and present your defense. Your pleading or answer must meet the following

requirements:

1

(a) It must be in writing, and otherwise comply with the Arkansas Rules of Civil

Procedure.

(b) It must be filed in the Court Clerk's office within thirty (30) days from the day you

were served with this summons.

3. If you desire to be represented by an attorney, you should immediately contact your

attorney so that an answer can be filed for you within the time allowed.

4. Additional Notices: Summons, Complaint, Plaintiff's First Combined Discovery

Requests to Defendant First Nation Insurance Group

5. WITNESS, my hand and the seal of the court this $\underline{\phantom{5}}$ day of March, 2007.

DONNA PALMER
CIRCUIT COURT CLERK

BY_____
DEPUTY CLERK

Clerk's address:
Crittenden County Courthouse
100 Court Street
Marion, AR 72364

2

## IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
## CIVIL DIVISION

OLD ST. PAUL MISSIONARY BAPTIST CHURCH    PLAINTIFF

V.               NO. CV 2007- 126

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10         DEFENDANTS

### SUMMONS

Plaintiff's Lawyer:  Lawrence W. Jackson (92194)
       Lawyers for Plaintiff
       P.O. Box 1359
       West Memphis, AR 72303
       (870) 735-3420

THE STATE OF ARKANSAS TO DEFENDANT: **Gwen Moyo**

         261 Oakmont Drive
         New Orleans, LA 70128

         10043 Jefferson Highway
         Baton Rouge, LA 70809

         101 Convention Center Dr., Suite 700
         Las Vegas, NV 89109

### NOTICE

1. You are hereby notified that a lawsuit has been filed against you. The relief sought is

stated in the attached Complaint.

2. The attached Complaint will be considered admitted by you and a judgment may be

entered against you for the relief sought in the complaint unless you file a pleading and thereafter

1

appear and present your defense. Your pleading or answer must meet the following requirements:

(a) It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

(b) It must be filed in the Court Clerk's office within thirty (30) days from the day you were served with this summons.

3. If you desire to be represented by an attorney, you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. Additional Notices: : Summons, Complaint, Plaintiff's First Combined Discovery Requests to Defendant First Nation Insurance Group

5. WITNESS, my hand and the seal of the court this ⬚ day of March, 2007.

DONNA PALMER
CIRCUIT COURT CLERK

BY: _____
DEPUTY CLERK

Clerk's address:
Crittenden County Courthouse
100 Court Street
Marion, AR 72364

2

## IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
## CIVIL DIVISION

OLD ST. PAUL MISSIONARY BAPTIST CHURCH                    PLAINTIFF

V.                                                        NO. CV 2007-126

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10                                        DEFENDANTS

### SUMMONS

Plaintiff's Lawyer:    Lawrence W. Jackson (92194)
                       Lawyers for Plaintiff
                       P.O. Box 1359
                       West Memphis, AR 72303
                       (870) 735-3420

THE STATE OF ARKANSAS TO DEFENDANT: **Craig Greene**
                                    4822 S.W. 159th Ave.
                                    Miramar, FL 33027

                                    10043 Jefferson Highway
                                    Baton Rouge, LA 70809

                                    101 Convention Center Dr., Suite 700
                                    Las Vegas, NV 89109

### NOTICE

1. You are hereby notified that a lawsuit has been filed against you. The relief sought is

stated in the attached Complaint.

2. The attached Complaint will be considered admitted by you and a judgment may be

entered against you for the relief sought in the complaint unless you file a pleading and thereafter

1

appear and present your defense. Your pleading or answer must meet the following requirements:

(a) It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

(b) It must be filed in the Court Clerk's office within thirty (30) days from the day you were served with this summons.

3. If you desire to be represented by an attorney, you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. Additional Notices: : Summons, Complaint, Plaintiff's First Combined Discovery Requests to Defendant First Nation Insurance Group

5. WITNESS, my hand and the seal of the court this ⌐ day of March, 2007.

DONNA PALMER
CIRCUIT COURT CLERK

BY: _____
         DEPUTY CLERK

Clerk's address:
Crittenden County Courthouse
100 Court Street
Marion, AR 72364

2