

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 0 9 2007

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

OLD ST. PAUL MISSIONARY BAPTIST CHURCH                     PLAINTIFF

V.                                                  3:07-cv-00043 WRW

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; CRAIG GREENE;
JOHN DOES 1-10;
DOE COMPANIES 1-10                                         DEFENDANTS

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER AND
NOTICE OF REMOVAL, OBJECTION TO REMOVAL, AND MOTION TO REMAND**

Defendants are co-conspirators in Ms. Moyo's scheme to illegally and fraudulently issue

surety bonds in several states. None of the defendants – or Doe defendants – possess a certificate

of authority to transact insurance (which is much broader than the sale or issuance of the policy)

in Arkansas or any other state, as far as counsel has been able to determine. Not only is their

conduct illegal and unlawful as a civil matter, it is also subject to criminal sanction. Defendants

are now attempting to perform an end run around the provisions of the Arkansas Unauthorized

Insurers Act and other provisions of the Arkansas Insurance Code that prohibit them from

entering an appearance or asserting any defenses to liability under the bond unless or until they

either obtain a certificate of authority from the Arkansas Insurance Commissioner or deposit

sufficient cash and securities into the registry of the court to satisfy any potential judgment.

**1. ARKANSAS UNAUTHORIZED INSURERS ACT AND PREAPPEARANCE
SECUIRTY REQUIREMENT**

Plaintiff brought this action, in part, against First Nation Insurance Group ("FNIG")

pursuant to the Arkansas Unauthorized Insurers Act, codified at Ark. Code Ann. §§ 23-65-201 to

-205 which is part of the Arkansas Insurance Code. See, Ark. Code Ann. 23-60-101 (See notes regarding "meaning of 'this code,'" which specifically identifies the Unauthorized Insurers Act as one of the code's provisions). Surety contracts are expressly included in the definition of insurance in Arkansas, including Ark. Code Ann. § 23-62-106 ("Surety insurance" defined and includes "[i]nsurance guaranteeing the performance of contracts"), Ark. Code Ann. § 23-63-205 (surety specifically listed as a kind of insurance requiring certificate of authority), Ark. Code Ann. § 23-63-1004 (uses term "surety insurer"). Although plaintiff acknowledges that there have been some cases that have drawn an artificial distinction between surety contracts and insurance contracts, plaintiff notes that none of those cases appear to have explored the fact that sureties appear to be universally defined as insurance contracts for purposes of state insurance codes and questions the correctness and reasoning of those rulings. See also, *Main Supply, Inc. v. United Bonding Ins. Co.*, 263 N.E.2d 314 (Ohio 1970); and Couch on Insurance 2d § 73:187 (applies to sureties and performance bonds).

This is exactly the situation contemplated by the Unauthorized Insurers Act. Each of the defendants illegally transacted insurance and effectuated the bonds at issue within the State of Arkansas. Included within the definition of unauthorized insurance transactions are solicitation, negotiation, effectuation of insurance, inspection of risks, fixing rates, investigation or adjustment of losses, and collection of premiums, Ark. Code Ann. § 23-65-101, which each of the named and Doe defendants did. Notwithstanding the other defendants' indignation at having been named in this suit, plaintiff has named them as joint tortfeasors because they conspired to engage in, acted jointly in, and at the very least aided and abetted, a large-scale surety and insurance fraud scheme that appears to have been led by Ms. Moyo. See Exhibit A (Cease and

Z:\Old St Paul - Templebloc\FNIG008b Brief.doc

Desist Order obtained by Louisiana Insurance Commissioner against Ms. Moyo). See, *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir. 2000) (Posner, J.).

In connection with the bonds issued in this matter, each of the defendants illegally sold or effectuated, and otherwise transacted insurance in the State of Arkansas without a certificate of authority, and there are consequences for that illegal conduct, including prohibitions on defendants seeking any affirmative relief or even filing a pleading until they either obtain a certificate of authority or deposit cash or securities with the court (valid securities, as opposed to the bonds at issue here). Given defendants' blatant disregard for the law, plaintiff has no confidence in the solvency of FNIG and the other defendants and is invoking the protections of the Arkansas Unauthorized Insurers Act. None of the named defendants have a certificate of authority to transact insurance within the State of Arkansas (or in any other state as far as plaintiff has been able to determine) or any other license or authorization to solicit, negotiate, effectuate, inspect risks, fix rates, investigate or adjust losses, or collect premiums – each of which is a prohibited and unauthorized insurance transaction pursuant to Ark. Code Ann. § 23-65-101. See Exhibit B (Affidavit of Taryn Lewis).

> (a)(1) No person or entity in this state shall act as agent or broker for or otherwise represent or aid any insurer, health maintenance organization, multiple employer welfare arrangement, multiple employer trust, association, or any other person or entity in the solicitation, negotiation, or effectuation of insurance, inspection of risks, fixing of rates, investigation or adjustment of losses, collection of premiums, or in any other manner in the transaction of insurance with respect to subjects of insurance resident, located, or to be performed in this state if that person or entity is not authorized or licensed by the State Insurance Department for those purposes.

Ark. Code Ann. § 23-65-101. Indeed, the very acts of defendants in contesting (or even investigating and planning to dispute) plaintiff's claims violate the Act and renders each of the defendants an unauthorized insurer. Defendants' very investigation and efforts to dispute the

Z:\Old St Paul - Templebloc\FN1G008b Brief.doc

liability and amount of plaintiffs' claim constitutes an effort to investigate and adjust losses in violation of the plain language of Ark. Code Ann. § 23-65-101.

Pursuant to Ark. Code Ann. § 23-65-201, FNIG and the other named defendants have been acting individually and collectively as an unauthorized insurer by effectuating the illegal bonds (i.e., surety insurance contracts) that are the subject of this suit in the State of Arkansas, and actively conspiring to, and indeed acting to, violate numerous civil and criminal provisions of the Arkansas Insurance Code. Pursuant to Ark. Code Ann. § 23-65-102, defendants cannot lawfully "institute or file, or cause to be instituted or filed, any suit, action, or proceeding in this state to enforce any right, claim, or demand arising out of any insurance transaction in this state until the insurer has obtained a certificate of authority." Furthermore, pursuant to Ark. Code Ann. § 23-65-205, defendants are even prohibited from filing any pleading or answer until they have either secured a certificate of authority to transact insurance in the State of Arkansas or deposited cash or securities into the registry of the court to secure the payment of any final judgment that may be rendered.

As at least one commentator has noted, such pre-appearance security requirements exist in nearly every state and have sustained numerous constitutional challenges because they protect the strong public policy of making sure that funds are available to pay insurance claims. See, Kirill P. Strounnikov, 7 Conn. Ins. L.J. 465 (2001), citing, *Curiale v. Ardra Ins. Co., Ltd.*, 667 N.E.2d 313 (N.Y. 1996). See also, *British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 212 F.3d 138 (2nd Cir. 2000) (preanswer bond requirement does not violate due process clause). Furthermore, the bond is required prior to even filing a motion to dismiss, given that defendants are limited to contesting only whether they acted as an unauthorized insurer and whether service should be quashed. *Levin v. Intercontinental Cas. Ins. Co.*, 742 N.E.2d 109 (N.Y. 2000).

Z:\Old St Paul - Templebloc\FNIG008b Brief.doc

Pursuant to Ark. Code Ann. § 23-65-205, defendants' filing of their answer *and notice of removal* was wholly unlawful and they should be stricken unless defendants either obtain a certificate of authority from the Arkansas Insurance Commission or deposit cash and good securities sufficient to cover any potential judgment, or at least the $2,690,659 amount of the bond, into the registry of the court. Ark. Code Ann. § 23-65-205 provides:

> (1) Before an unauthorized insurer shall file or cause to be filed any pleading in any action or proceeding instituted against it under §§ 23-65- 202 and 23-65-203, such insurer shall:
>
> (a) Procure a certificate of authority to transact insurance in this state; or
>
> (b) Deposit with the clerk of the court in which such action or proceeding is pending cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action. The court may in its discretion make an order dispensing with such deposit or bond where the insurer makes a showing satisfactory to the court that it maintains in a state of the United States funds or securities, in trust or otherwise, sufficient and available to satisfy any final judgment which may be entered in such action or proceeding and that the insurer will pay any final judgment entered therein without requiring suit to be brought on such judgment in the state where such funds or securities are located.
>
> (2) The court in any action or proceeding in which service is made in the manner provided in § 23-65-203 may, in its discretion, order such postponement as may be necessary to afford the defendant reasonable opportunity to comply with the provisions of subsection (1), and to defend such action.
>
> (3) Nothing in subsection (1) is to be construed to prevent an unauthorized insurer from filing a motion to quash or to set aside the service of any process made in the manner provided in § 23-65-203 hereof on the ground either:
>
> (a) That such unauthorized insurer has not done any of the acts enumerated in § 23-65-202; or
>
> (b) That the person on whom service was made pursuant to § 23-65-203(1) was not doing any of the acts therein enumerated.
>
> (4) Any such insurer shall be subject to the provisions of § 23-79-208.

Z:\Old St Paul - Templebloc\FNIG008b Brief.doc

In construing the nearly identical provisions of New York's unauthorized insurers act, the

New York Court of Appeals in *Levin v. Intercontinental Cas. Ins. Co.*, 742 N.E.2d 109 (N.Y.

2000) held:

> Intercontinental argues that pre-answer motions to dismiss are not "pleadings." In
> support of its position, Intercontinental relies on *Allstate Ins. Co. v. Administratia
> Asigurarilor De Stat,* 948 F.Supp. 285, 295 [S.D.N.Y.]. There, the court allowed a
> carrier to file a motion for summary judgment without a bond. The court relied in
> part on CPLR 3011, entitled "Kinds of pleadings." The court noted that "[s]ection
> 3011 provides for a complaint, an answer, a cross-claim against plaintiff, a
> counterclaim or cross-claim against a not-yet-joined party, interpleader pleadings,
> third party pleadings, a reply to counterclaim, and a reply to a reply" *(id.,* at 295).
> Because a motion for summary judgment was not on the list, the court concluded
> that it was not a "pleading" for purposes of Insurance Law § 1213(c).
>
> We disagree with the holding in *Allstate.* CPLR 3011 is essentially a "labeling
> provision" *(see,* Siegel, Practice Commentaries, McKinney's Cons. Laws of N.Y.,
> Book 7B, CPLR C3011:1, at 625-626). In concluding that a bond is required, we
> are guided not by nomenclature but by the realities of litigation. We are unwilling
> to import CPLR 3011's labeling function into Insurance Law § 1213. To do so
> would impede section 1213's objectives.
>
> [3] The Legislature's choice of words in the exception carved out by subdivision
> (c)(3) is revealing. By carving out certain "motions" *528 to set aside service, the
> Legislature obviously contemplated that other "motions" may qualify as pleadings
> under subdivision (c)(1). Whether any particular motion to dismiss--other than the
> one carved out--falls within the category of a "pleading" must be determined in
> accordance with the Legislature's objectives in enacting the statute. [FN3]
> FN3. Section 1213's legislative history indicates that defending on the merits
> requires the posting of a bond *(see,* Mem. of N.Y. Law Rev. Commn., at 26-27,
> Bill Jacket, L. 1949, ch. 826 [explaining that "defendant should be permitted to
> appear *specially* to set aside the service without depositing security" (emphasis
> added) ]; 1949 N.Y. Legis. Ann., at 252 ["Before an unauthorized insurer may
> come into the state to defend the action, it must (post a bond)"]; *see also,*
> Hitchcock and Biging, *Tactical Use of State Laws Requiring Unauthorized
> Insurers to Post Preanswer Security,* 31 Tort & Ins. L.J. 767, 767 [1996]
> [explaining that the carrier "may be required to post money, bonds or other
> security equal in amount to the insurer's potential exposure before it will be
> permitted to defend the case on its merits"] ).
>
> Intercontinental argues that allowing it to file a motion to dismiss without posting
> a bond would not compromise section 1213(c)'s goals. It contends that "[i]f a
> complaint is so flawed that it cannot survive **112 ***637 a motion to dismiss,
> there is no possibility that a judgment [for plaintiff] will be entered and no need to

ensure that funds are available to satisfy one." Thus, according to Intercontinental, allowing foreign carriers to forestall filing a bond until they interpose a formal answer is consistent with section 1213(c)'s objective. We disagree.

Allowing Intercontinental to raise its defenses without posting a bond would compromise section 1213(c)'s goal of assuring that funds are available in New York to satisfy any judgment in plaintiff's favor. A foreign carrier could wage extensive, costly motion practice, and yet avoid the bond requirement by simply advancing a host of defenses before interposing a formal answer. [FN4] If defeated, the carrier could simply ignore the remainder of the proceedings and relegate the plaintiff to a default judgment with no in-State collateral. This is what the Legislature sought to avoid by enacting section 1213(c). We therefore read the term "pleading" to include Intercontinental's motion to dismiss.

FN4. For example, in *Curiale v. Ardra Ins. Co.,* 88 N.Y.2d, at 272, 644 N.Y.S.2d 663, 667 N.E.2d 313, *supra,* where we held that section 1213 satisfies procedural due process, the parties had conducted six years of pre-answer litigation.

Here, defendants are affirmatively seeking to invoke the jurisdiction of this court and

assert their right to removal. To the extent that defendants' acted collectively as an unauthorized

insurer, they are prohibited from doing so pursuant to Ark. Code Ann. § 23-65-102 & § 23-65-

205. At the very least, FNIG is prohibited from doing so. The notice of removal and answer

should be stricken for all of the defendants, but it is inarguable that they should be stricken for

FNIG.

## 2. DEFENDANTS' DENIAL OF JURISDICTION AND FNIG'S LACK OF AUTHORITY TO JOIN IN REMOVAL OR REMOVE THIS MATTER IN ABSENCE OF SECURITY OR CERTIFICATE OF AUTHORITY RENDERS REMOVAL DEFECTIVE

Preliminarily, a case can only be removed only if the court had original jurisdiction.

However, defendants' collective answer denies jurisdiction. It is anomalous and inconsistent to

permit defendants to invoke federal jurisdiction while they are also denying jurisdiction. See,

*Lapides v. Board of Regents of University System of Georgia,* 535 U.S. 613 (2002).

Accordingly, defendants should be held to their pleading, including their denial of subject matter

and personal jurisdiction, and this matter should be remanded to the state court.

To the extent that the court construes the provisions of Ark. Code Ann. § 23-65-205 to apply only to FNIG, they would still prohibit separate defendant FNIG from filing its consent or joining with the notice of removal, thus rendering the removal improper because it was not unanimous. *Mayo v. Christian Hosp. Northeast-Northwest*, 962 F.Supp. 1203 (E.D. Mo. 1997), citing, *Chicago, R. I. & P. Ry. Co. v. Martin*, 178 U.S. 245 (1900). Each defendant was either served or appeared by filing his or her answer on or before April 13, 2007. FNIG was served on or before March 29, 2007, with the summons, complaint, and first combined discovery requests to FNIG. To date, FNIG is prohibited as a matter of law from joining in the petition for removal pursuant to the Arkansas Unauthorized Insurers Act, and more than 30 days has elapsed since it was served. Accordingly, the removal lacks the valid, unanimous consent of each defendant, and this matter should be remanded to the Circuit Court of Crittenden County, Arkansas.

## 3. DEFENDANTS' FAILED TO PROVE DIVERSITY OF CITIZENSHIP AND LACK OF COMPLETE DIVERSITY OF PARTIES PURSUANT TO 28 U.S.C. § 1332(c)

Defendants have also failed to provide proof of the citizenships of either FNIG or AA Risk Management, Inc. Neither appears to be listed in any official or agency records or data base of businesses showing the type of organization, where it was organized, or any other business information, neither shows up in a search of the Dun & Bradstreet business directory, and, of course, neither has any license or certificate of any insurance regulatory authority. No information is provided regarding the citizenship(s) of their partners, investors, directors, or any other individual affiliated with the entities if they are not corporate entities or limited liability companies. In sum, the record is void of any evidence of the citizenship of either FNIG or AA Risk Management, Inc. from which the court can determine of which state they are citizens and whether diversity is present. "It is, to say the least, well settled that federal diversity jurisdiction requires complete diversity, so that no defendant is a citizen of the same state as any plaintiff."

*Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997). Because federal courts are courts of limited jurisdiction, 28 U.S.C. § 1441 is strictly construed against removal, a plaintiff's choice of forum and a defendant's right of removal are not on the same footing and a defendant has the burden of proof to establish complete diversity. See, *Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc.*, 92 F.Supp.2d 891 (N.D. Iowa 2000). And here, there is no proof of the citizenship of either FNIG or AA Risk Management, Inc.

In any event, there is no diversity with respect to FNIG, regardless where it claims its principal place of business or state of organization, if any, are. Because this is a direct action against an insurer as defined by Arkansas law and the insured (plaintiff) is not a party defendant, 28 U.S.C. § 1332(c) deems First Nation Insurance Group to be a resident of same state as the insured, plaintiff St. Paul Missionary Baptist Church. *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6 (1989). Thus, FNIG is deemed a resident of the State of Arkansas for diversity purposes, there is not complete diversity of the parties, and removal was improper.

Pursuant to the definition of "insurance" in Arkansas Insurance Code (see Ark. Code Ann. 23-60-102), which includes surety insurance (see Ark. Code Ann. § 23-62-106 ("Surety insurance" defined and includes "[i]nsurance guaranteeing the performance of contracts") and Ark. Code Ann. § 23-63-205, which specifically lists "surety" as a "kind of insurance" requiring a certificate of authority under Arkansas law), plaintiff is the "insured" under the terms of both the payment and performance bonds and FNIG is deemed to be a resident of Arkansas. True and correct copies of the bonds are attached hereto as Exhibit C. The performance bond specifically identifies plaintiff as the "Owner" and paragraph 1 of the performance bond provides:

> The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract. . . .

The payment bond specifically identifies plaintiff as the "Owner" and paragraph 1 of the payment bond provides:

> The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials, and equipment furnished for use in the performance of the Construction Contract. . . .

It is the Owner's project that is "insured" and the Owner, St. Paul Missionary Baptist Church, is a resident of the State of Arkansas and not a party defendant.

## 4. EQUITABLE CONSIDERATIONS

Despite the fact that removal is a statutory creation, equitable considerations play a role in decisions. For example, plaintiffs are not permitted to fraudulently join defendants to avoid diversity jurisdiction, and equitable tolling may permit an otherwise untimely removal, *e.g.*, *Elsholtz v. Taser Int'l, Inc.*, 410 F. Supp. 2d 205 (N.D. Tex. 2006). There is no reason for not subjecting defendants to the same equitable considerations of fairness. It is only fair that defendants be required to play by the same rules of equity in determining whether removal was proper. Here, defendants have blatantly defied civil, administrative, and criminal provision of the Arkansas Insurance Code (and other states) and now ask this court to be part of their efforts to obstruct and delay plaintiff's efforts to make FNIG (or AA Communications or whatever enterprise did bond the project) supply the security that it promised to supply. Plaintiffs submit that given defendants' denial of this court's jurisdiction, defendants' unclean hands, and defendants' continuing violations of the Arkansas Insurance Code, including the Unauthorized Insurers Act, the court should also remand this matter as a either matter of equity or abstention.

## CONCLUSION

For all of the foregoing reasons, defendants' removal was improper, the notice of removal and their answer should be stricken, and this matter should be remanded to the Circuit

Court of Crittenden County, Arkansas. Even if the pleadings are not stricken, defendants have failed to prove diversity of citizenship with respect to all of the defendants – namely, FNIG and AA Risk Management, Inc. Alternatively, even if the court determines that removal was proper, pursuant to Ark. Code Ann. §§ 23-65-102 & 23-65-205, it should still strike defendants' answer, all of their affirmative defenses and claims for relief, and all of their motions other than those specifically permitted under Ark. Code Ann. § 23-65-205(3) (of which they have filed none), unless defendants immediately post sufficient cash or securities to pay any potential judgment or obtain a certificate of authority from the Arkansas Insurance Commission.

RESPECTFULLY SUBMITTED,
RIEVES, RUBENS & MAYTON

Lawrence W. Jackson (92194)
Attorney for Plaintiff
Rieves, Rubens, & Mayton
Post Office Box 1359
West Memphis, AR 72303
(870) 735-3420

Z:\Old St Paul - Templebloc\FNIG008b Brief.doc

## CERTIFICATE OF SERVICE

I, Lawrence W. Jackson, one of the lawyers for plaintiff, state that on the date below I mailed a copy of the foregoing pleading upon the following, by placing a copy in the United States Mail, postage prepaid, addressed as follows:

David A. Grace
Attorney at Law
P.O. Box 5851
500 Main Street, Suite A
North Little Rock, AR 72119

Justin R. Giles
Attorney at Law
100 Peabody Place, Suite 1150
Memphis, TN 38103

Lawrence W. Jackson

8 May 2007
Date

Z:\Old St Paul - Templebloc\FNIG008b Brief.doc