**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

OLD ST. PAUL MISSIONARY BAPTIST CHURCH                    PLAINTIFF

v.                              Case No. 3:07CV00043 JLH

FIRST NATION INSURANCE GROUP;
AA RISK MANAGEMENT, INC.;
AA COMMUNICATIONS, INC.;
GWEN MOYO; GRAIG GREENE;
DANIEL ESPARZA; JAMES E. ZOUCHA;
CONG LI; and DOE COMPANIES 1-10                          DEFENDANTS

## OPINION AND ORDER

Old St. Paul Missionary Baptist Church brings this action against First Nation Insurance Group; AA Risk Management, Inc.; AA communications, Inc.; Gwen Moyo; Graig Greene; Daniel Esparza; James Zoucha; and Cong Li. Old St. Paul has filed a motion for summary judgment, as has Daniel Esparza. For reasons discussed below, the Court treats Esparza's motion for summary judgment as a separate response to Old St. Paul's motion for summary judgment. For the following reasons, Old St. Paul's motion for summary judgment is granted in part and denied in part, and Esparza's motion for summary judgment is denied.

## I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party

meets its burden, the nonmoving party must "come forward with 'specific facts showing that there

is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106

S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original).

A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the

nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

Old St. Paul Missionary Baptist Church is located in West Memphis, Arkansas.  In 2003, it

decided to build a new worship center.  Blockett Woody was hired as the project manager, and

Templebloc, Inc., as the general contractor.  Templebloc was owned by Kenneth "Ted" Blockett.

Because Woody lacked an Arkansas license, the project eventually continued with Templebloc as

both contractor and project manager.  Old St. Paul's construction contract with Templebloc was

valued at $2,690,659.

The project was financed in part by a construction loan from the Bank of Bartlett, which

required a bond.  Blockett, owner of Templebloc, obtained payment and performance bonds from

First Nation Insurance Group.  The bonds were signed by Blockett (on behalf of Templebloc) and

Gwen Moyo (on behalf of both First Nation Insurance Group and AA Communications), and they

covered the full amount of the construction contract: $2,690,659.  Templebloc is listed as the

contractor, Old St. Paul as the owner, and First Nation Insurance Group as the surety.  According to

the bonds, First Nation Insurance Group had given a general power of attorney to Gwen Moyo.

Pursuant to Moyo's instructions, the bank wired $121,079.65[1] from Old St. Paul's construction account to her and AA Communications, Inc.

Around November and December 2006, the construction slowed, and concerns were raised over whether Templebloc was adequately paying subcontractors and vendors. Templebloc eventually walked away from the project. As a result, in December 2006 Old St. Paul's pastor, Rev. Frederick Anthony, met with Moyo and Craig Greene, who held himself out to be a representative of AA Risk Management. They requested that Old St. Paul provide additional information, which Rev. Anthony said he did.

On January 10, 2007, there was a meeting in West Memphis regarding the construction and bond issues. Present at the meeting were Rev. Anthony, members of Old St. Paul's building committee, Moyo (representing First Nation Insurance Group), Greene (who said he was representing AA Risk Management), Blockett (representing Templebloc), Samuel Turner (the architect), and Daniel Esparza (who said he was representing First Nation Insurance Group). Rev. Anthony recorded that meeting, and Old St. Paul submitted a copy of the recording as evidence. At the outset, Moyo characterized the purpose of the meeting as investigatory—to investigate Old St. Paul's claim under its performance bond with First Nation Insurance Group. Moyo said she had contacted and spoken with the contractors and other entities involved in the project. Moyo questioned Rev. Anthony and the building commission as to why Old St. Paul and the bank approved payment of upwards of 95% of the contract price for work that had not been partially or substantially completed. Rev. Anthony countered that the contractor had abandoned the project, and that the performance bond obligated First Nation Insurance Group to complete the project if the contractor

---

[1]The $121,079.65 represented a 4.5% premium on the overall contract price.

was in default.  Rev. Anthony then questioned whether, if the contractor was properly declared to be in default, First Nation Insurance Group would abide by the terms of the performance bond. Moyo then criticized Old St. Paul for not having paid certain of its contractors for completed work on a timely basis or for significant periods of time.  Moyo asked Blockett why Templebloc had boarded up the building, removed equipment and personnel, and appeared to have ceased doing any work on the project.  Blockett never provided a direct answer, and at one point suggested that he would not answer the question while the meeting was still being recorded.  Moyo alleged that Old St. Paul had defaulted as the owner because it paid upwards of 95% on the total contract price while simultaneously asserting that the project was substantially incomplete.  Moyo, Esparza, and Greene took the position that Templebloc had not actually abandoned the project at that time because it still had property on site.  Moyo alleged that Old St. Paul had not been honest with First Nation Insurance Group as to the progress that actually had been made and the amount of payment given to contractors and subcontractors.  The meeting ended with no apparent agreement as to how the parties were going to proceed in resolving the dispute.

On January 30, 2007, Old St. Paul notified both First Nation Insurance Group and Templebloc that Templebloc was in default on its contract.[2]  Unable to resolve the disputes, Old St. Paul terminated Templebloc's contract on February 9, 2007, and declared it to be in default pursuant to Paragraph 3 of the performance bond.

---

[2]Old St. Paul also notified them that two entities had asserted liens on the project: John Widener d/b/a Boaz Home Improvement Company, LLC, and Albert Alexander d/b/a A & A Stucco Co.

Pursuant to Paragraph 4 of its performance bond, Old St. Paul then attempted to contact First Nation Insurance Group. Paragraph 4 states that after Old St. Paul properly declared Templebloc to be in default, First Nation Insurance Group was to take one of the following actions:

4.1     Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2     Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3     Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4     Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1     After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

.2     Deny liability in whole or in part and notify the Owner citing reasons therefor.

First Nation Insurance Group never responded.

After thirteen months of no progress, Old St. Paul was forced to hire an architect and project manager to complete the job. According to Rev. Anthony's affidavit, Old St. Paul incurred the following approximate costs because the performance bond was dishonored:

a.     $1,400,000 to fix defective work and complete the project;

b.     $181,384 in additional design costs;

    c.      $75,000 for legal expenses associated with defending Old St. Paul against liens and attempting to enforce performance of the construction contract and bonds;

    d.      $170,000 for potential liability on the disputed lien claimed by Boaz Improvement Company, LLC;

    e.      $300,000 in additional interest and finance costs because of the delay in construction; and

    f.      unspecified additional costs to obtain the warranty specified in the construction contract with Templebloc.

Rev. Anthony says that the total costs incurred by Old St. Paul amount to approximately $2,000,000.[3]

Old St. Paul says that these costs are recoverable under Paragraph 6 of its performance bond.

Paragraph 6 states:

> After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

> > 6.1    The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

> > 6.2    Additional legal, design, professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

---

[3]Gwen Moyo is currently imprisoned at a federal correctional unit in Marianna, Florida. On April 15, 2009, a judgment was imposed against Moyo in the Eastern District of Louisiana. She was found guilty of conspiracy to commit mail and wire fraud, mail fraud, wire fraud, insurance crimes affecting interstate commerce, money laundering, and engaging or attempting to engage in unlawful monetary transactions. AA Communications, Inc., was also found guilty on all counts of those same charges. As a part of that judgment, the court ordered Moyo to pay restitution to three different entities. Old St. Paul was awarded restitution in the amount of $2,000,000. The interest requirement was waived.

6.3     Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

Old St. Paul filed suit in Crittenden County, Arkansas.   After removal, Old St. Paul eventually filed a first amended complaint, in which it asserts several claims: breach of the performance and payment bonds; fraud[4]; bad faith; conversion; and civil conspiracy to sell unlawfully and fraudulently surety insurance that was invalid.[5]   The complaint also alleges that the individually named defendants were acting as the alter egos of First Nation Insurance Group and AA Management and Communications, and asks that the Court pierce the corporate veil and grant judgments against the individual defendants.

The procedural history of this case is long and involved.   Several different attorneys have now withdrawn from representing the various defendants.   The defendants other than First Nation Insurance Group have been unrepresented since September 28, 2007.   The most recent counsel of record for First Nation Insurance Group were attorneys with the Barrett & Deacon law firm.   Barrett & Deacon filed its first motion to withdraw on October 22, 2008, citing irreconcilable differences. Sixteen months later, Barrett & Deacon again moved to withdraw for the same reasons.   The Court ordered a March 5, 2010 telephone conference regarding the motion to withdraw, and ordered First

---

[4]Old St. Paul asserts two different counts of fraud.  First, the defendants fraudulently represented that they were authorized insurers issuing valid performance and payment bonds. Second, the defendants fraudulently investigated Old St. Paul's claim on the bonds by attempting to induce false statements and the generation of false records, and by generating false records so as to deny liability under the bonds.

[5]Old St. Paul says that the defendants were not authorized or licensed by the State of Arkansas to solicit, sell, or effectuate surety bonds for projects within the State of Arkansas.  In so doing, Old St. Paul says the defendants violated the Arkansas Unauthorized Insurers Act, Ark. Code Ann. § 23-65-101 *et seq.*

7

Nation Insurance Group to have an officer who is knowledgeable about this litigation and authorized to speak on behalf of that entity available to participate.  The Court ordered that First Nation Insurance Group provide the name and telephone number of the officer who would speak for it by the close of business on March 3, 2010.  A copy of the order was served on First Nation Insurance Group by electronic mail and by Federal Express.  The Federal Express package was delivered and a return receipt received by Barrett & Deacon.

The Court conducted the March 5, 2010 telephone conference.  However, the Court received no response from First Nation Insurance Group, and no officer or person ever provided a name and telephone number.  Barrett & Deacon indicated that they received no response from First Nation Insurance Group regarding the Court's order.  The Court thus granted Barrett & Deacon's motion to withdraw as counsel for First Nation Insurance Group.

Old St. Paul had also filed a motion to compel discovery responses from First Nation Insurance Group and Gwen Moyo.  The Court granted that motion on March 5, 2010.  The Court ordered First Nation Insurance Group and Moyo to provide full answers to the interrogatories and full responses to the document requests within 14 days.  The Court further warned that failure to provide the required information may result in sanctions, up to and including the entry of a default judgment.  So far as the Court is aware, more than one month later, neither First Nation Insurance Group nor Moyo have provided answers and responses as ordered by the Court.

On March 15, 2010, Old St. Paul filed a motion for extension of time to file its motion for summary judgment, explaining why it was unable to file a motion for summary judgment by March 11, the previous deadline.  The Court granted Old St. Paul's request for an extension.  That

8

same day, on March 15, Old St. Paul filed its motion for summary judgment.  The response deadline

was March 29.  Esparza is the only defendant who has responded.

In its motion for summary judgment, Old St. Paul summarizes its statement of undisputed

material facts as follows:

2.      As demonstrated in the accompanying Statement of Material Facts and
supporting exhibits, [Old St. Paul] is entitled to summary judgment on each
claim.   In short, the surety [(First Nation Insurance Group)] is an
unauthorized insurer under Arkansas (and Canadian) law and none of the
Defendants possessed a certificate of authority or other license to engage in
the business of insurance, which specifically includes surety bonds and
contracts under the definition of insurance in every insurance code of every
State and Province in the United States and Canada. [First Nation Insurance
Group] and Moyo each engaged in their own far-reaching surety scam but
came together in October 2005, when [First Nation Insurance Group] issued
Moyo its power of attorney, which Moyo then used to issue the surety bonds
in [First Nation Insurance Group's] name to [Old St. Paul] in March 2006.
After seeking to invoke the bonds in December 2006 and January 2007, [Old
St. Paul] learned of a far-reaching surety scam centering around Moyo and
AA Communications, which eventually resulted in their conviction in
October 2008 on 41 counts of mail fraud, wire fraud, and money laundering.
In the meantime, [First Nation Insurance Group] continued to communicate
with Moyo through early March 2007, asking her to forward bonds and
money to it.

3.      At the very least, every Defendant aided and abetted Moyo and the others in
at least part of her fraudulent scheme.

4.      The Defendants, including [First Nation Insurance Group], used their
corporate forms for purposes of committing fraud.  There was absolutely no
lawful conduct in which [First Nation Insurance Group] could have been
engaging when it issued its power of attorney to Moyo and continued to ask
her for bonds and premiums.  [First Nation Insurance Group] also had no
corporate status and other corporations that it may claim actually own it either
(a) did not exist until April 2007 or (b) had had its corporate status
administratively revoked.

5.      Shortly after this matter was filed, [separate defendant James Zoucha] filed
bankruptcy.  Plaintiff would pray that its claims against Zoucha be dismissed
without prejudice and without waiver of its right to receive restitution from

9

Zoucha as part of any plea, conviction, an sentence he has received for his involvement with Moyo's surety bond scam.

6.    Otherwise, the Court should grant the Plaintiff's motion for summary judgment on each and every count and claim, award the requested declaratory relief, and pierce and collapse the corporate veils of the Defendants.

Based on those facts, Old St. Paul seeks the following relief:

a.    declaratory relief and judgment for the breach and default of performance and payment bonds issued by [First Nation Insurance Group] to cover the construction of [Old St. Paul's] new worship center in West Memphis, Arkansas, pursuant to Ark. Code Ann. § 23-65-101(f) and the terms of the bonds;

b.    judgment for fraud related to the negotiation, sale, and issuance of the bonds;

c.    judgment for common law bad faith and statutory bad faith (Ark. Code Ann. § 23-79-208) in failing to investigate [Old St. Paul's] claims or otherwise honor the bonds;

d.    judgment for fraud in the investigation and handling of [Old St. Paul's] claims under the bonds (related to the bad faith counts);

e.    an order piercing and collapsing any corporate veils between defendants and their owners, directors, and officers because of their failure to observe corporate formalities and their use of the corporate forms to perpetrate an international surety scam;

f.    judgment against all defendants based also on civil conspiracy and aiding and abetting the fraud;

g.    judgment against each Defendant for punitive damages; and

h.    Plaintiff's costs, expenses, and attorneys fees, as well as pre-judgment and post-judgment interest.

## III.

The only response to Old St. Paul's motion for summary judgment has come from Daniel Esparza.  Esparza only disputes the factual allegations made directly against him.  Otherwise, Old

St. Paul's statement of material facts remains undisputed.  Given the dearth of communication from the defendants in this matter, there is nothing to indicate that First Nation Insurance Group, Gwen Moyo, or any other defendant besides Esparza will provide a substantive response combating Old St. Paul's assertions.  Local Rule 56.1(c) provides that all material facts set forth by the moving party in its motion for summary judgment "shall be deemed admitted unless controverted by the statement filed by the non-moving party. . . ."  The Court has reviewed the factual allegations, arguments, and supporting exhibits contained in Old St. Paul's motion for summary judgment.  Although many of Old St. Paul's factual allegations may not be in dispute, it does not necessarily follow that those facts are sufficient to grant summary judgment in favor of Old St. Paul on all of its legal claims.

A.      **THE PARTIES**

Old St. Paul seeks summary judgment against the following parties: First Nation Insurance Group; AA Risk Management, Inc.; AA Communications, Inc.; Gwen Moyo; Daniel Esparza; Graig Greene; and Cong Li.   Shortly after filing suit, separate defendant James Zoucha filed for bankruptcy.  Old St. Paul has moved to dismiss its claims against Zoucha, so those claims are dismissed without prejudice.

1.      **Cong Li**

Old St. Paul asserts that Cong Li "participated with, conspired with, and aided and abetted Moyo in her larger surety fraud scheme."  In support, Old St. Paul submits the transcript of Li's testimony against Moyo in her criminal trial.  Old St. Paul does not claim that Li conspired with Moyo in her scheme against Old St. Paul.  The transcript of Li's testimony makes no mention of Old St. Paul or Moyo's dealings in Arkansas.  Old St. Paul has offered no evidence that Li's involvement with Moyo had any direct impact on Moyo's dealings with Old St. Paul.  As the moving party, Old

St. Paul bears the burden of showing that there is no genuine issue of material fact.  It has failed to carry that burden with respect to its claims against Cong Li.

### 2.    Gwen Moyo

Based on the evidence, Gwen Moyo appears to have been the primary contact between First Nation Insurance Group and Old St. Paul.  First Nation Insurance Group gave Moyo a general power of attorney, and she sold the performance bond to Old St. Paul.  She was also present at the January 10, 2007 meeting along with Greene, Esparza, Rev. Anthony, and the Old St. Paul building commission.

As previously stated, Moyo is currently imprisoned at a federal correctional unit in Marianna, Florida.  In April 2000 she was found guilty on a total of 41 counts, based on the following offenses: conspiracy to commit mail and wire fraud, mail fraud, wire fraud, insurance crimes affecting interstate commerce, money laundering, and engaging or attempting to engage in unlawful monetary transactions.  AA Communications, Inc., was also found guilty on all counts of those same charges. As a part of that judgment, the court ordered Moyo to pay restitution to Old St. Paul in the amount of $2,000,000.[6]  Moyo has not responded to Old St. Paul's motion for summary judgment.

### 3.    Craig Greene

Old St. Paul asserts that Craig Greene also "participated with, conspired with, and aided and abetted Moyo in her larger surety fraud scheme."  Old St. Paul has submitted evidence showing that Craig Greene was directly involved with the performance bond at issue in this case.  The evidence against Greene consists of emails indicating that he and Rev. Anthony discussed matters over the

---

[6]The Court also awarded restitution to CD Champion Hotels, Inc., in the amount of $142,252, and to Great Southern Dredging in the amount of $321,555.

telephone; a letter dated December 15, 2006, in which Greene[7] lists information he needs from Old

St. Paul and requests that the parties schedule a meeting; and a letter dated January 6, 2007, in which

Moyo confirms the parties' January 10 meeting and on which Greene[8] and Esparza were copied.  At

all relevant times to this dispute, Greene held himself out to be representing AA Risk Management.

Greene has not responded to Old St. Paul's motion for summary judgment.

### 4.    Daniel Esparza

Daniel Esparza has furnished what the Court will treat as a response to Old St. Paul's motion

for summary judgment.  Esparza styles his response as a "motion for summary judgment," which he

filed on March 30, 2010, within the deadline for responding to Old St. Paul's motion for summary

judgment.[9]  Esparza's response does not contain a separate statement of material facts.  Because of

its brevity, the Court will quote it in large part:

> The controlling facts with respect to Defendant Esparza is [sic] that he has been
> falsely accused in this lawsuit and allegations against him are unjust and without
> standing.  Esparza provided an answer to this initial lawsuit and reasserts his position

---

[7]The letter is written on AA Risk Management letterhead and lists Greene as the Director of Construction, Claim Division.

[8]The letter is written on AA Risk Management letterhead and signed by Gwen Moyo. Greene is copied as representing "Construction claims."  Esparza is copied as representing First Nation Insurance Group.

[9]Although Esparza styles his filing as a motion for summary judgment, the deadline for filing dispositive motions was extended up to and including March 12, 2010, pursuant to a March 5 order, and was later extended to March 15 pursuant to an order that same day.  Esparza was on notice of the motions deadline and of the Court's extensions of that deadline.  Esparza filed his motion for summary judgment more than two weeks after the most recently imposed deadline. Not only did Esparza's filing miss the deadline, but its content is more indicative of a response to Old St. Paul's motion for summary judgment than a stand-alone motion.  It is also unaccompanied by a separate statement of material facts, as required by Local Rule 56.1(a). Rather than discard altogether Esparza's filing as an untimely motion, the Court will treat it as a timely response to Old St. Paul's motion for summary judgment.

on the project as a consultant and assisted [sic] both parties with ways to mitigate a potential solution to the best interest of construction [sic] project.  The facts are as follows:

1.    Esparza was not, nor has ever been [sic] an officer, owner, director, employee, agent or responsible party for AA Communications, Inc.[; First Nation Insurance Group; or AA Risk Management, Inc.].

* * *

4.    Esparza was not, nor has ever been [sic] a contractual party to any agreement between Old St. Paul Missionary Baptist Church, Templebloc, Inc., or any construction or bond related contract on the subject project.

5.    Plaintiff has failed to prove any allegations against Esparza in the subject action and has no standing to continue its prosecution.

6.    Esparza has no financial interest in any action related to this project.

7.    Esparza was acting to the benefit of all parties to review and assess potential construction claims on the subject project and in no way had any back ground [sic] information with respect to Moyo / AA / Old St. Paul's [sic] claims.

8.    Esparza was defrauded and damaged by AA Communications, Inc.

9.    Esparza was defrauded and damaged by Gwen Moyo.

10.   Esparza is being wrongfully named in this action and the continued prosecution of this matter with respect to Esparza by Old St. Paul Missionary Baptist Church is malicious and harmful.

Esparza is proceeding *pro se*.  His response is unsupported by an affidavit or other exhibits. Even though his personal statements directly contradict the allegations that Old St. Paul makes against him, his personal statements are conclusory in nature and are unsupported by specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting FED. R. CIV. P. 56(e)) (emphasis in original).  On the other hand, Old St. Paul's assertions against Esparza are supported by the transcript of trial testimony of FBI financial analyst Melanie Haggerty, in which Haggerty implicates Esparza in Moyo's fraudulent

scheme; an affidavit from Rev. Frederick Anthony, pastor of Old. St. Paul Missionary Baptist Church[10]; and email correspondence between Esparza, Moyo, and others.

To the extent that Esparza's filing constitutes a timely motion for summary judgment, that motion is denied. Again, the motion is unsupported by affidavits or other evidence, and its statements are conclusory allegations with no support in specific factual assertions. If Esparza's filing is a timely motion for summary judgment, it fails to meet Esparza's initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2553.

### 5.    AA Risk Management and AA Communications

Craig Greene held himself out to be representing AA Risk Management, Inc. Gwen Moyo held herself out to be representing AA Communications in addition to First Nation Insurance Group. Moyo signed the performance and payment bonds as a representative of both AA Communications and First Nation Insurance Group. Along with Moyo, AA Communications was also found guilty for conspiracy to commit mail and wire fraud, mail fraud, wire fraud, insurance crimes affecting interstate commerce, money laundering, and engaging or attempting to engage in unlawful monetary transactions**.** Other than Greene and Moyo indicating that they were representatives of AA Risk Management and AA Communications, respectively, there is little or no evidence before the Court

---

[10]In his affidavit, Rev. Anthony states that on January 10, 2007, he met with Moyo, Kenneth "Ted" Blockett (owner of Templebloc, the general contractor), Samuel Turner (the architect), Graig Greene, and Daniel Esparza. Old St. Paul has submitted a recording of that meeting. In the recording, Esparza holds himself out to be a representative of First Nation Insurance Group, which explicitly contradicts paragraph 2 of the brief in support of his styled motion for summary judgment.

indicating exactly what actions AA Risk Management or AA Communications took that caused injury to Old St. Paul.

### 6.      First Nation Insurance Group

Besides Gwen Moyo, First Nation Insurance Group is the primary focal point of Old St. Paul's claims.  The Court has already discussed in some detail the factual allegations against First Nation Insurance Group and the involved procedural history regarding First Nation Insurance Group's legal representation.  Old St. Paul alleges that at the time it purchase the performance bond and when it filed this lawsuit, First Nation Insurance Group had no corporate status; First Nation Insurance Group Holdings Corporation's corporate status in Nevada had been revoked; and First Nation Insurance Group Holdings Corporation in Canada did not exist.  First Nation Insurance Group has presented no evidence to the contrary.  First Nation Insurance Group is now unrepresented by counsel, has not responded to the Court's orders, and has not responded to Old St. Paul's motion for summary judgment.  The factual allegations against it are supported by the evidence and not in dispute.

### B.      THE CLAIMS

Old St. Paul appears to move for summary judgment on all of its claims, including its claims for damages, against all of the defendants.  Federal Rule of Civil Procedure 56(d)(1) provides that summary judgment may be rendered on only part of the action:

> If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue.  The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys.   It should then issue an order specifying what facts—including items of damages or other relief—are not genuinely at issue.  The facts so specified must be treated as established in the action.

Rule 56(d)(2) further provides that "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."

Although it is not common for courts to grant summary judgment in favor of the party with the ultimate burden of proof, it is not uncommon for a court to enter summary judgment in favor of the plaintiff on liability alone in appropriate circumstances. *See* 10B FEDERAL PRACTICE AND PROCEDURE, CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE §§ 2736 and 2737 (1998); *see also Jada Toys, Inc. v. Chicago Import, Inc.*, 2009 WL 3055370, (N.D. Ill. Sept. 18, 2009) (granting summary judgment in favor of plaintiff on issue of liability for breach of contract, but not on the amount of damages, pursuant to Rule 56(d)(2)); *Rognirhar v. Southern*, 2009 WL 3643451, at *3 (D. Neb. Oct. 28, 2009) (because defendant failed to respond, there was no genuine issue of material fact, so the court granted summary judgment to plaintiff on his claims for breach of contract and conversion as to liability); *JT Megatron 11, LLC v. Air Comet, S.A.*, 2009 WL 4756432, at *1, 3 (S.D.N.Y. Dec. 8, 2009) (where defendants filed no substantive response, district court granted summary judgment to plaintiffs on two claims as to liability, but not as to amount of damages, pursuant to Rule 56(d)(2)); *Newark v. R K O General, Inc.*, 294 F. Supp. 358, 359, 367 (D.C.N.Y. 1968) (in an action under Securities Exchange Act of 1934, court granted summary judgment to plaintiff on the issue of liability on Section 16(b) claim). This case presents an appropriate circumstance for the Court to grant summary judgment in favor of Old St. Paul on the issue of liability on certain of Old St. Paul's claims.

### 1.	Breach of the Performance Bond

The undisputed material facts show that Old St. Paul properly made a claim on its performance bond with First Nation Insurance Group. First Nation Insurance Group did not respond

to Old St. Paul's claims on that bond and has refused to make any payments to Old St. Paul in accordance with the terms of the bond. The undisputed facts discussed above show that there is no genuine issue of material fact as to whether First Nation Insurance Group is in breach of that contract. Therefore, summary judgment is granted in favor of Old St. Paul on the issue of liability on its claim against First Nation Insurance Group for breach of the performance bond.

Old St. Paul has submitted evidence of the amount of damages it has incurred as a direct result of First Nation Insurance Group's breach of contract. Old St. Paul says it paid $121,079.65 for its performance bond, but has received nothing in return. It has submitted two documents titled "Estimate of Probable Cost to Complete," both dated October 30, 2007, and both prepared by Caradine Companies, an architecture firm. The first estimate states the total project costs to be $1,490,982, but the second estimate states the total project costs to be $2,946,968. Neither the estimates themselves nor Old St. Paul's supportive brief explain the reason for the differences between the two totals. According to Rev. Anthony's affidavit, Old St. Paul incurred the following damages as a result of First Nation Insurance Group's breach of contract: approximately $1,400,000 to fix defective work and complete the project; approximately $181,384 for additional design costs; approximately $75,000 for legal expenses associated with defending against liens and attempting to enforce the bonds; potential liability for the disputed $170,000 lien claimed by Boaz Improvement Company; approximately $300,000 in additional interest and finance costs; and additional costs to obtain the warranty specified in the construction contract with Templebloc. Added together (and not including the unknown additional costs), Rev. Anthony's approximated costs equal $2,126,384. By Rev. Anthony's own admission, however, Old St. Paul's claimed costs include approximations, potential liabilities, and unknown figures. Old St. Paul concludes that its damages amount to

approximately $2,000,000, arguing that that figure is supported by the Eastern District of Louisiana's determination of $2,000,000 to be a reasonable amount of restitution for Moyo to make to Old St. Paul.  But that order of restitution was made against Moyo based on multiple criminal convictions, not against First Nation Insurance Group based on a breach of contract claim.  Suffice it to say that Old St. Paul has failed to establish that there is no genuine issue of material fact as to the amount of damages it incurred as a result of First Nation Insurance Group's breach of contract.

### 2.      Bad Faith

Old St. Paul makes a claim for bad faith against all of the defendants.  Under Arkansas law, the affirmative tort of bad faith applies only against insurance companies.  *Country Corner Food and Drug, Inc. v. First State Bank and Trust Co. of Conway, Ark.*, 332 Ark. 645, 655, 966 S.W.2d 894, 898 (1998).  Therefore, at the outset, Old St. Paul's motion for summary judgment on its bad faith claim against all defendants other than First Nation Insurance Group is denied.

Based on the evidence and undisputed factual assertions, the Court finds that there is no genuine issue of material fact as to whether First Nation Insurance Group is liable for the tort of bad faith as a matter of law.  It is undisputed that Old St. Paul has sustained damages; that First Nation Insurance Group has attempted to avoid liability in bad faith under the performance bond; and that First Nation Insurance Group's conduct proximately caused damage to Old St. Paul.  *See* ARKANSAS MODEL JURY INSTRUCTIONS—CIVIL (hereinafter AMI) 406.   "Bad faith" requires affirmative misconduct, without a good faith defense.   The affirmative misconduct must be dishonest, oppressive, or malicious.  *Id.*  The undisputed evidence shows that First Nation Insurance Group, through Gwen Moyo, solicited and sold payment and performance bonds in the State of Arkansas without being licensed to do business or sell insurance in Arkansas.  The undisputed evidence also

19

shows that First Nation Insurance Group collected a premium on the performance bond from Old

St. Paul without being licensed to do so.  Because First Nation Insurance Group has not responded

to Old St. Paul's motion, it is also undisputed that after Old St. Paul attempted to make a claim under

the performance bond, First Nation Insurance Group attempted to avoid liability by avoiding making

payment as it was contractually required to do.  First Nation Insurance Group has come forward with

no good faith defense to its actions, which were dishonest and oppressive.  Therefore, summary

judgment is granted in favor of Old St. Paul on the issue of liability on its claim against First Nation

Insurance Group for the tort of bad faith.

###### 3.        Piercing the Corporate Veil

Old St. Paul asks the Court to pierce the corporate veil and hold the owners and officers

personally liable for First Nation Insurance Group's actions.  A court should "only reluctantly and

cautiously" pierce the corporate veil, and it may not be pierced "absent a showing of improper

conduct."  *N.L.R.B. v. Bolivar-Tees, Inc.*, 551 F.3d 722, 727 (8th Cir. 2008).  The moving party bears

the burden that there are substantial reasons for piercing the corporate veil.  *Id.*

Old St. Paul alleges that at the time it purchase the performance bond and when it filed this

lawsuit, First Nation Insurance Group had no corporate status; First Nation Insurance Group

Holdings Corporation's corporate status in Nevada had been revoked; and First Nation Insurance

Group Holdings Corporation in Canada did not exist.  First Nation Insurance Group has come

forward with no evidence showing that it was an incorporated entity in 2006 when Moyo negotiated

and sold the performance and payment bonds.  According to Ark. Code Ann. § 4-27-204, all persons

purporting to act on behalf of a corporation, knowing that there was no incorporation, are jointly and

severally liable for all liabilities created while so acting.  Old St. Paul has not asserted claims against

the officers and directors of First Nation Insurance Group.  There is no evidence as to whether other

persons who acted on behalf of First Nation Insurance Group knew that it was not incorporated.

Therefore, Old St. Paul's motion for summary judgment asking that the Court pierce the corporate

veil of First Nation Insurance Group is denied.

### 4.        Aiding and Abetting Illegal Sale of Surety Bonds

Old St. Paul seeks summary judgment on its claim that Moyo engaged in the fraudulent and

illegal sale of surety bonds in Arkansas, and that Greene and Esparza aided and abetted her

misconduct.  Old St. Paul asserts that the defendants' conduct violated Ark. Code Ann. § 23-65-101,

which prohibits the unauthorized sale of insurance.  Section 101(a) provides:

> No person or entity in this state shall act as agent or broker for or otherwise represent
> or aid any insurer . . ., association, or any other person or entity in the solicitation,
> negotiation, or effectuation of insurance, inspection of risks, fixing of rates,
> investigation or adjustment of losses, collection of premiums, or in any other manner
> in the transaction of insurance with respect to subjects of insurance resident, located,
> or to be performed in this state if that person or entity is not authorized or licensed
> by the State Insurance Department for those purposes.

Ark. Code Ann. § 23-65-101(a).  Old St. Paul alleges that the defendants' conduct violated

subsection (f):

> Any insurance producer licensed in this state, or *any other person*, who sells, solicits,
> or negotiates a product of an unauthorized person or entity in violation of this section
> or who represents or aids an unauthorized person or entity in violation of this section
> *may be personally liable* for all damages caused by the unauthorized person or entity,
> including claims unpaid by the unauthorized person or entity.

Ark. Code Ann. § 23-65-101(f) (emphasis added).

It is undisputed that First Nation Insurance Group and Moyo were not authorized or licensed

by the Arkansas Insurance Department to conduct business and sell insurance in the State of

Arkansas.  It is also undisputed that First Nation Insurance Group and Moyo solicited and negotiated

Old St. Paul's payment and performance bonds, inspected its risks, investigated Old St. Paul's claim for losses, and collected premiums from Old St. Paul. Therefore, there is no genuine issue of material fact as to whether First Nation Insurance Group and Moyo violated section 101(a).

Nor is there any genuine issue of material fact as to whether Greene and Esparza assisted Moyo and First Nation Insurance Group in the very activities that constitute violations of section 101(a). Esparza and Greene were both present with Moyo at the January 10, 2007 meeting with Old St. Paul, where they attempted to avoid responsibility for First Nation Insurance Group having to act under the performance bond. Esparza explicitly held himself out to be a representative of First Nation Insurance Group at that meeting. Other evidence, including an affidavit from Rev. Anthony and email exchanges between the defendants, shows that Esparza, Greene, and Moyo were all involved in the solicitation of bonds and inspection of claims made on those bonds. Esparza and Greene both aided Moyo and First Nation Insurance Group in violation of section 101(a). As a direct result of their misconduct, Old St. Paul incurred damages. Therefore, Esparza, Greene, and Moyo are, pursuant to section 101(f), "personally liable for all damages caused by the unauthorized person or entity, including claims unpaid by the unauthorized person or entity." Summary judgment is thus granted in favor of Old St. Paul on the issue of liability on its claim against First Nation Insurance Group, Gwen Moyo, Daniel Esparza, and Craig Greene for the fraudulent and illegal sale of bonds in the State of Arkansas.

### 5.      Fraud

Old St. Paul's motion for summary judgment asks for judgment against the defendants for fraud "related to the negotiation, sale, and issuance of the bonds" and "in the investigation and handling of [Old St. Paul's] claims under the bonds (related to the bad faith counts)." To establish

fraud, a plaintiff must demonstrate the following elements: (1) a false representation of a material

fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which

to make the representation; (3) intent to induce action or inaction in reliance upon the representation;

(4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance.

*Gorman v. Gilliam*, 2010 Ark. App. 118.

The undisputed material facts show that Gwen Moyo's actions constitute fraud.  On April 10,

2008, the Eastern District of Louisiana issued a superseding indictment against Moyo.   The

indictment alleged that Moyo was not licensed or authorized to transact insurance in any state, yet

held herself out as a "local agent," "risk manager," "underwriter," and "attorney-in-fact" for

unlicensed, unauthorized insurers.  The indictment also alleged that First Nation Insurance Group

was "an alien insurer purportedly doing business in Toronto, Canada," but was "neither licensed nor

authorized to transact insurance in any state."   The overt acts alleged in that indictment include

Moyo's dealings with Old St. Paul:

16.  On or about March 15, 2006, **MOYO** caused to be wired a letter to Keith Collins, Bank of Bartlett, Cordova, Tennessee, stating that she was "the underwriter for First Nation Insurance Company" and that the contractor for the construction of the Old St. Paul Missionary Baptist Church had been approved for a bond in the amount of $2,690,659.  **MOYO** further directed the bond premium of $121,079.65 be wired to Hibernia Bank, New Orleans, Louisiana, Account #xxxxx1910.

17.  On or about March 17, 2006, **MOYO** caused the Bank of Bartlett, Cordova, Tennessee, to wire $121,079.65 to account number xxxxx1910 held by **AA COMMUNICATIONS** with Hibernia National Bank, New Orleans, Louisiana.

18.  On or about March 21, 2006, **MOYO** represented herself as First Nations' "lawful attorney in fact" authorized to issue surety bonds on its behalf up to $100,000,000.

19.  On or about January 10, 2007, **MOYO** traveled to West Memphis, Arkansas to meet with [Rev. Anthony] and Board Members of Old St. Paul to discuss the construction project and the church's demand on the construction bond.

From the Court's reading of the superseding indictment, it appears that the factual allegations regarding Moyo's involvement with Old St. Paul formed the basis for the criminal charges of (1) wire fraud and (2) being a felon who willfully engaged in the business of insurance whose activities affected interstate commerce and participated in such business. Moyo was found guilty of conspiracy to commit mail fraud and wire fraud, mail fraud, wire fraud, insurance crimes affecting interstate commerce, money laundering, and engaging or attempting to engage in unlawful monetary transactions. As part of that conviction, Moyo was ordered to pay restitution to Old St. Paul in the amount of $2,000,000.

The undisputed facts show that Mayo is liable to Old St. Paul for fraud. She made false representations of material fact to Old St. Paul, both when she initially sold the performance and payment bonds and during the course of her investigation of Old St. Paul's claim on the performance bond. It is obvious from the evidence that Moyo knew that her representations were false, namely, she knew that she and First Nation Insurance Group were not authorized to issue performance bonds in Arkansas and had no intention of paying on the performance bond should a dispute arise. She intended to induce Old St. Paul to pay a premium on the performance bond and to delay seeking legal assistance in making a claim on the performance bond, all based on Old St. Paul's reliance on her false representations. Old St. Paul justifiably relied on her false representations. Finally, Old St. Paul suffered damages as a result of its reliance. There is no genuine issue of material fact as to whether Moyo's actions directed at Old St. Paul constitute the tort of fraud. Therefore, summary judgment is granted in favor of Old St. Paul on the issue of liability on its claim against Moyo for fraud. For all the same reasons, summary judgment is also granted on Old St. Paul's claim of fraud against First Nation Insurance Group.

### 6.        Punitive Damages

Finally, Old St. Paul seeks summary judgment on its claim for punitive damages.  Punitive damages may be imposed to punish a wrongdoer and to deter the wrongdoer and others from similar conduct.  In order to recover punitive damages, the plaintiff has the burden of proving that (1) the defendant knew or ought to have known, in the light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury and that he or she continued such conduct with malice or reckless disregard of the consequences from which malice may be inferred, or (2) the defendant intentionally pursued a course of conduct for the purpose of causing injury, or both.  AMI 2218.  Even when these elements are shown, the finder of fact is not required to assess punitive damages.  *Id*.  Therefore, it would be improper to enter summary judgment on punitive damages.

## CONCLUSION

For the foregoing reasons, Old St. Paul's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Document #153.  Old St. Paul's motion for summary judgment on its claims against Cong Li is denied.  Summary judgment is granted in favor of Old St. Paul on the issue of liability on the following claims: (1) against First Nation Insurance Group for breach of the performance bond; bad faith; violation of Ark. Code Ann. § 23-65-101; and fraud; (2) against Gwen Moyo for violation of Ark. Code Ann. § 23-65-101 and fraud; and (3) against Daniel Esparza and Craig Greene for violation of Ark. Code Ann. § 23-65-101.  Genuine issues of material fact remain as to the amount of compensatory damages to which Old St. Paul is entitled on those claims.  Old St. Paul's motion for summary judgment as to punitive damages is denied.  On its own motion, Old St. Paul's claims against James Zoucha are dismissed without prejudice.  Daniel Esparza's motion for summary judgment is DENIED.  Document #156.

Trial on the remaining issues will begin at 9:00 a.m. on May 4, 2010, in the large courtroom,

615 S. Main Street, Jonesboro, Arkansas.  Counsel should be present at 8:30 a.m.

IT IS SO ORDERED this 16th day of April, 2010.


_____

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE